Robert I. TYRONE, Appellant,

v.

The STATE of Texas, State.

No. 2–91–326–CR.

Court of Appeals of Texas,
Fort Worth.

March 31, 1993.

Rehearing Overruled April 27, 1993.

Discretionary Review Refused
Sept. 22, 1993.

Jim Shaw, Fort Worth, for appellant.

Tim Curry, Crim. Dist. Atty., Betty Marshall and Charles Mallin, Asst. Chiefs of the Appellate Section, and David Curl, Malena Caledron, Steve Marshall, Asst. Crim. Dist. Attys., Fort Worth, for the state.

Before LATTIMORE, DAY and CLYDE R. ASHWORTH (Retired Sitting by Assignment), JJ.

## OPINION

CLYDE R. ASHWORTH, Retired Justice.

Appellant, Robert I. Tyrone, was convicted by a jury of sexual assault under TEX.PENAL CODE ANN. § 22.011 (Vernon Supp.1993). The jury assessed his punishment at eleven years confinement in the Texas Department of Criminal Justice. He appeals both the guilty verdict and the punishment.

We affirm in part and reverse and remand in part.

## I. FACTS

Appellant's indictment and conviction is for sexually assaulting a minor. The minor was his step-granddaughter. She was raised by appellant and her grandmother from the time she was a child.

At the guilt phase of appellant's trial, the trial court excluded evidence that appellant had fondled, performed oral sex on, and attempted penetration of the victim during her childhood. The trial court admitted this evidence at the punishment phase pursuant to this court's decision in *Hunter v. State*, which the court of criminal appeals recently overruled. *Hunter v. State*, No. 2–90–170–CR (Tex.App.—Fort Worth, Aug. 30, 1991) (not designated for publication), *overruled, Grunsfeld v. State*, 843 S.W.2d 521 (Tex.Crim.App.1992).

## II. POINTS OF ERROR

Appellant brings five points of error. He argues: 1) TEX.PENAL CODE ANN. § 22.011(a)(2)(A) (Vernon 1989) is unconstitutionally vague because it fails to define "female sexual organ"; 2) the trial court erred in failing to instruct the jury on accomplice witness testimony; 3) reversal is required because the presiding judge was not sitting in Criminal District Court No. 2 pursuant to an administrative order; 4) the trial court erred in the punishment phase by allowing evidence of unadjudicated extraneous offenses pursuant to TEX.CODE CRIM. PROC.ANN. art. 37.07 (Vernon Supp.1993); and 5) this application of article 37.07 constitutes an ex post facto violation.

## III. HOLDING

We overrule appellant's first point of error because the statute clearly applies to him; therefore, he cannot successfully challenge the statute's alleged vagueness. We overrule his second point of error because the victim is not an accomplice as a matter of law and the applicable statute does not require that her testimony be corroborated. Appellant's third point of error is overruled because the retired judge was duly authorized to sit; therefore, he could exchange benches with another judge without a formal exchange order.

Appellant's fourth point of error is sustained because the admission of unadjudicated extraneous offenses was erroneous and an abuse of discretion. For this reason, we do not address his fifth point of error.

## IV. ANALYSIS

### A. *Appellant Failed to Meet the Prerequisite for a Vagueness Claim*

▪ Under his first point of error, appellant argues that TEX.PENAL CODE ANN.

§ 22.011(a)(2)(A) (Vernon Supp.1993) is unconstitutionally vague on its face. The statute states:

> (a) A person commits an offense if the person:
>> (2) intentionally or knowingly:
>>> (A) causes the penetration of the anus or *female sexual organ* of a child by any means....

*Id.* (emphasis added). He argues that the statute fails to provide the public with adequate notice as to what is meant by the term "female sexual organ." However, he does not make a showing that the statute is unconstitutional as applied to him. The evidence is that he fully penetrated the victim's vagina. This conduct is clearly proscribed by the statute. *Aylor v. State,* 727 S.W.2d 727, 730 (Tex.App.—Austin 1987, pet. ref'd). A defendant cannot successfully challenge the statute for vagueness when it clearly applies to his conduct. *Vuong v. State,* 830 S.W.2d 929, 941 (Tex. Crim.App.), *cert. denied,* — U.S. —, 113 S.Ct. 595, 121 L.Ed.2d 533 (1992). Because the statute clearly applies to appellant's conduct, we overrule his first point of error.

### B. A Minor is Legally not an Accomplice to Statutory Rape

█ In his second point of error, appellant argues that the trial court erred in failing to instruct the jury on corroboration of accomplice witness testimony. He relies on TEX.CODE CRIM.PROC.ANN. art. 38.14 (Vernon 1979), which requires the corroboration of accomplice witness testimony, and *Brown v. State,* 657 S.W.2d 117 (Tex.Crim. App. [Panel Op.] 1983). The court of criminal appeals in *Brown* held that "a female who consents to or voluntarily enters into an incestuous intercourse is an accomplice witness." *Brown,* 657 S.W.2d at 118. Reading *Brown* and article 38.14 together, appellant contends that his victim was an accomplice because this is a statutory rape case and the indictment does not allege that the victim did not consent to the sexual intercourse.

First, we note that *Brown* is inapplicable here as it was not determining whether a victim of statutory rape could be an accomplice. In Texas, the longstanding rule has been that a minor cannot legally consent to statutory rape, therefore the minor is not an accomplice. *Scoggan v. State,* 799 S.W.2d 679, 681 (Tex.Crim.App.1990); *Hernandez v. State,* 651 S.W.2d 746, 749–51 (Tex.Crim.App.1983) (opinion on reh'g). Because a minor cannot be an accomplice, the State did not have to corroborate that minor's testimony to obtain a conviction for statutory rape. *Hernandez,* 651 S.W.2d at 751. While appellant did not discuss *Hernandez* in his brief, to address his argument we must determine whether the rule espoused by *Hernandez* is overruled.

No case directly overrules *Hernandez,* but a month after it was decided, the state legislature enacted TEX.CODE CRIM.PROC. ANN. art. 38.07 (Vernon Supp.1993) (the "Outcry Statute"). The statute clearly affects the *Hernandez* holding. *Scoggan,* 799 S.W.2d at 683. It states:

> A conviction under Chapter 21, Section 22.011, or Section 22.021, Penal Code, is supportable on the uncorroborated testimony of the victim of the sexual offense if the victim informed any person, other than the defendant, of the alleged offense within six months after the date on which the offense is alleged to have occurred. The requirement that the victim inform another person of an alleged offense does not apply if the victim was younger than 14 years of age at the time of the alleged offense.

TEX.CODE CRIM.PROC.ANN. art. 38.07 (Vernon Supp.1993). The court of criminal appeals, when interpreting the legislative history of this act, specifically stated "we can find no evidence in the legislative history from 1975 of any intention to alter the longstanding rule that the testimony of a minor victim who cannot consent to sexual acts requires no corroboration or outcry in order to support a conviction." *Scoggan,* 799 S.W.2d at 682. The court held that the statute simply "requires stricter proof when the sexual assault victim is 14 or older." *Id.* at 683.

We will not hold that a statute which simply requires stricter proof in some statutory rape cases also overrules the law

that minors are not accomplices to statutory rape. A holding that minors can legally consent to statutory rape would require the State to either disprove consent or corroborate every minor's testimony, regardless of whether the minor was younger than fourteen or made the required "outcry." There is nothing to suggest that the legislature meant the Outcry Statute to have this effect and such a reading of the statute would be unreasonable.

■ The longstanding rule that a minor cannot legally consent and is not an accomplice to statutory rape is still the rule in Texas. Because the victim in this case was a minor, she was not an accomplice as a matter of law and article 38.14 is inapplicable.

Even so, the victim was fifteen when the offense occurred, so the State had a heavier evidentiary burden. It met this burden by producing testimony from the victim that the offense occurred in December and that she told her boyfriend about the incident prior to March or April. She made the requisite "outcry" within the statutory period. Thus, the trial court correctly refused to give the jury an instruction on corroboration. Appellant's second point of error is overruled.

### C. A Duly Authorized Retired Judge May Exchange Courts Without an Order

■ In his third point of error, appellant asserts that reversal is required because the judge who presided over his trial did not do so pursuant to an order. The transcript reveals that the presiding judge was a retired judge assigned to sit in Criminal District Court No. 3. The assignment was made by the presiding judge of the eighth administrative judicial district pursuant to sections 74.056 and 75.002 of the Texas Government Code. The problem appellant complains of is that the judge conducted appellant's trial in Criminal District Court No. 2, instead of presiding in Criminal District Court No. 3.

Appellant argues that where there is no order of assignment from the administrative judge to the particular court in which

the case was tried, reversal is required independent of whether a trial objection was made. For his argument, appellant relies on *Herrod v. State*, 650 S.W.2d 814, 817–18 (Tex.Crim.App.1983).

In *Herrod*, the court of criminal appeals considered a case where there was no order of assignment from the presiding judge of the administrative section. *Id.* at 817. This presented further problems because there was no proof on the record that the regular judge was absent, disabled, or disqualified, or that the retired judge executed the necessary bond and took the necessary oath of office. *Id.* Thus, the court was specifically dealing with a question of authority of a retired district judge to act. *Id.*

*Herrod* is not applicable in this case. We are not dealing with a question of authority, the only problem in this case is that the judge was assigned to a different court than the one in which he presided. The assignment empowers him as a "district judge" within the rule that no formal order need be entered for him to exchange benches with the duly elected judge of Criminal District Court No. 2. TEX. CONST. art. V, § 11; *Buchanan v. State*, 471 S.W.2d 401, 404 (Tex.Crim.App.1971), *cert. denied*, 405 U.S. 930, 92 S.Ct. 984, 30 L.Ed.2d 804 (1972); *Alfaro v. State*, 638 S.W.2d 891, 895 (Tex.Crim.App.1982). Appellant's third point of error is overruled.

### D. Evidence of Unadjudicated Extraneous Offenses was Erroneously Admitted at the Punishment Phase

Appellant argues in his fourth point of error that the trial court erred in admitting evidence of unadjudicated extraneous offenses in the punishment phase of trial. The court of criminal appeals recently addressed the issue of admissibility of unadjudicated extraneous offenses in *Grunsfeld*, 843 S.W.2d at 521. The court held that under article 37.07, section 3(a), relevant evidence is not admissible unless it is permitted by the Rules of Evidence and "if the evidence sought to be admitted is evidence of an extraneous offense, it satisfies article 37.07(3)(a)'s definition of prior crimi-

nal record." *Id.* at 523. Unadjudicated extraneous offenses do not meet the statutory definition. *Id.* This holding seems to mandate that we immediately sustain appellant's point of error.

However, the State is not ready to concede that evidence of unadjudicated extraneous offenses may *never* be admitted in the punishment phase of a trial. After a careful perusal of the State's arguments and the applicable case law, we do not decide that the State's arguments fail per se. Instead, we hold that the facts of this case do not present an instance in which appellant's unadjudicated extraneous offenses were properly admitted at his punishment proceeding.

### 1. Evidence of unadjudicated extraneous offenses was improperly admitted in the punishment phase of the trial.

The Dallas Court of Appeals, which originally interpreted present article 37.07, section 3(a) as limiting the admissibility of unadjudicated extraneous offenses, recently upheld two instances where unadjudicated extraneous offenses were admitted. *Beasley v. State*, 838 S.W.2d 695 (Tex. App.—Dallas 1992, pet. filed). The first is where such evidence was properly admitted at the guilt phase of a trial. *Id.* at 707. The second instance is where the defendant opened the door. *Id.* The State argues that variations of both of these instances apply in the case before us.

The reasoning the court in *Beasley* gave for its holding on the first ground was "[b]ecause it was already before the jury, it was not error to allow the informant to testify to the same evidence at the punishment phase." *Id.* The State takes *Beasley* one step further. It argues that where evidence of unadjudicated extraneous offenses was admissible in the guilt phase, but was improperly excluded, such evidence was properly admitted at the punishment phase of the trial. Before *Grunsfeld*, there was legal support for this argument.

The court of criminal appeals years ago declined "to hold it is error to admit evidence at the punishment stage that would have been admissible at the guilt stage." *Hargrove v. State*, 579 S.W.2d 238, 239 (Tex.Crim.App. [Panel Op.] 1979). The context of this holding is not readily apparent and the court did not detail the type of evidence to which the defendant objected.

This language in *Hargrove* was analyzed by the Corpus Christi Court of Appeals. *See Longoria v. State*, 700 S.W.2d 274, 276 (Tex.App.—Corpus Christi 1985, no pet.) In *Longoria*, the victim testified at the punishment phase that four days after the defendant committed the offense he shot her in the face. *Id.* The court held that this evidence would have been admissible in the guilt phase. *Id.* Then, the court held, relying on *Hargrove*, that "[e]vidence which would have been admissible at the guilt stage is admissible at the punishment stage." *Id.* The State relies on *Longoria*'s interpretation of *Hargrove*, but we note that since *Longoria* was decided neither case has been relied upon for this proposition.

Before the current revision of article 37.-07, section 3(a), the State presented its *Hargrove* argument to the court of criminal appeals in *Miller–El v. State*, 782 S.W.2d 892, 895 (Tex.Crim.App.1990). The facts of *Miller–El* were particularly abhorrent because the defendant attempted murder, but instead left his victim a paraplegic. *Id.* The State argued that "because evidence of extent of injury is admissible at the guilt stage, it may also be adduced at punishment." *Id.* The court agreed that the victim's paralysis was admissible at the guilt phase, but the court held that evidence of the victim's "future hardship as a paraplegic" was irrelevant and inadmissible at the guilt phase. *Id.* Thus, "the State's argument fail[ed] at inception" and the court did not address the real issue of whether evidence is admissible at the punishment phase just because it was admissible in the guilt phase. *Id.*

In the case at hand, the State's argument also fails at inception. The record reveals that, although the unadjudicated extraneous offenses were excluded in the guilt phase, the trial court did not abuse its discretion by excluding them.

There is a very limited exception to the general rule that unadjudicated extraneous offenses are inadmissible at the guilt phase of a trial. This exception arises when: 1) a child is sexually assaulted by a parent or another *in loco parentis*; 2) at trial the accused impeaches the child's credibility; 3) the offenses are relevant to show the culpable intent to commit the prohibited conduct or are otherwise relevant under TEX. R.CRIM.EVID. 404(b); 4) the State has a compelling need to introduce the evidence so that it is highly probative; and 5) the danger of unfair prejudice is not so substantial that it outweighs the probative value. *Montgomery v. State*, 810 S.W.2d 372, 394, 397 (Tex.Crim.App.1990) (opinion on reh'g). The court of criminal appeals recently rejected the use of this exception in the guilt phase of a trial when it fails to meet these criteria. *Vernon v. State*, 841 S.W.2d 407, 410–11 (Tex.Crim.App.1992).

> This exception arose out of necessity. Because incestuous crimes usually occur in secrecy, the State's case may depend upon the credibility of the child complainant. Where the accused calls that credibility into question, evidence of other identical or similar acts of sexual misconduct perpetrated by a parent against his own child may well serve to shore up testimony of the child if in logic it shows a lascivious attitude (relevant to culpable intent) and a willingness to act on it (relevant to prohibited conduct) that a jury might otherwise be loathe to attribute to a parent toward his child.

*Montgomery*, 810 S.W.2d at 394.

Keeping this in mind, we review the facts of this case. At a pretrial hearing, the State presented evidence that the specific sexual assault complained of was one of many such assaults the victim endured from appellant, her step-grandfather with whom she and her grandmother lived. She testified that appellant began fondling her when she was seven or eight and that this progressed to oral sex, and attempted penetration. Appellant told her not to tell her grandmother and only approached her when her grandmother was gone. The activity stopped when she was around twelve or thirteen because she realized it was wrong so she threw fits and avoided appellant. When she was fifteen and had a boyfriend, appellant began talking to her about sex again. Finally, in December of 1987, appellant had sex with her; this is the offense for which appellant was charged and found guilty.

After introducing this evidence at the pretrial hearing, the State argued that *Montgomery* allowed the admission of the unadjudicated extraneous offenses because of the relationship between the victim and appellant, in order to show the context of the ongoing situation. The court ruled that *Montgomery* did not allow admission of unadjudicated extraneous offenses from the beginning of the trial.

While the trial court did not allow the victim to testify about these previous incidents, it did admit a tape recording of a conversation between appellant and the victim, which she made without appellant's knowledge, and the transcript of this recording. The recording begins with appellant and the victim discussing her relationship with her boyfriend. The victim accused appellant of being angry because she did "stuff" with her boyfriend and would not do anything with appellant. He replied:

> Hey, now I've done blowed that off. I told you once before I'd take your secret and my secret, the secrets to the grave, I wouldn't tell a G___ D___ soul if they cut my f___ arm off.

The victim indirectly threatened to tell the authorities that appellant had molested her, to which appellant replied that it would be her word against his. He told her to stop seeing her boyfriend, and she refused.

> [Appellant]: [W]hat are you going to do? Threaten me that you're going to blow the whistle on me?
> [Victim]: I might.

Later appellant, while discussing how much the victim changed since seeing her boyfriend, said:

> Like I say, that's just, you know, it just ... well h___, I guess it hurts. I mean I know you cut me off the other day....
> [Victim]: You got mad.

[Appellant]: Well I got my feelings hurt a little bit. I thought I meant more to you than that.

Finally, the transcript ended with appellant saying:

Like I told you once before, anything I was doing, if you didn't like it you tell me, it would never be done again. H___ you're only human.

After the introduction of this evidence, appellant's counsel cross-examined the victim on the basis that: 1) she did not tell her grandmother about the incident; 2) she told no one besides her boyfriend about the incident until about eighteen months afterwards; 3) she was emotionally involved with her boyfriend; 4) she only started fighting with her grandmother and appellant when she started seeing her boyfriend; 5) she was grounded by her grandparents around the time of the offense (so she could not see her boyfriend); and 6) the offense occurred at a time when she was "angry" with appellant for not buying her the car she wanted. The prosecutor argued that these questions "plant[ed] an idea with [the] jury that this [rape accusation] is a retaliatory act on her part." Because of these "allegations of a fabricated story," he asked the court to allow evidence of the unadjudicated extraneous offenses, so that it could be heard in context and the jury would know that she had no motive to lie. The court refused. In closing argument, appellant's counsel used the evidence from the cross-examination to explain the reasons the victim accused appellant of sexually assaulting her.

■ With this evidence in mind, we acknowledge that our role of review is to uphold the trial court's ruling to exclude the evidence, unless it abused its discretion. *Montgomery*, 810 S.W.2d at 391. Thus, we apply the facts to the *Montgomery* criteria listed above. The first three *Montgomery* elements were met. First, the victim was a child when she was sexually assaulted by appellant. Appellant, her step-grandfather, was acting *in loco parentis* at the time. Second, appellant impeached her credibility at trial by pointing out the many reasons she had to lie about appellant.

Third, the testimony of the unadjudicated extraneous offenses was relevant to show his culpable intent to commit the prohibited conduct because of the fact that he only approached her when they were alone and he told her not to tell her grandmother.

Whether the State actually needed the testimony so that it has highly probative value which substantially outweighs its prejudicial effect is a more difficult determination. The facts show that the ultimate issue was hotly contested. While the State could only present the one witness to the crime, the victim, appellant presented three witnesses who each testified that they spoke to the victim regarding the sexual assault. Each stated the victim told them that appellant had only tried to have sex with her and that they never actually had sex.

■ Because of this evidence and the evidence showing the victim's motive to lie, the rest of the story regarding the previous sexual acts was probative. However, the State's case was very strong because of the tape recording and its transcript. This means that the evidence of the unadjudicated extraneous offenses was not highly probative. Thus, we hold that the trial court did not abuse its discretion in excluding the evidence because the danger of unfair prejudice from evidence of unadjudicated extraneous offenses outweighs its probative value. Because of this holding, we do not address the *Longoria* decision or whether *Grunsfeld* overrules it.

■ Now we go on to determine the State's next argument. The State introduced the evidence of unadjudicated extraneous offenses before appellant introduced any evidence, so appellant did not open the door to such evidence as in *Beasley*. *Drew v. State*, 777 S.W.2d 74, 76 (Tex.Crim.App. 1989); *Ewes v. State*, 841 S.W.2d 16, 18 (Tex.App.—Dallas 1992, pet. ref'd). The State, however, argues that the premature admission was cured by the defendant's factual presentation at the punishment hearing. For this argument, it relies on *Silva v. State*, 831 S.W.2d 819 (Tex.App.— Corpus Christi 1992, no pet.).

*Silva* is a case in which a sexually abused child testified during the guilt phase to other incidents of incestuous abuse before the stepfather/defendant impeached his credibility. *Id.* at 822. The court held that the premature admission was harmless because the facts revealed a "defense strategy aimed at impeaching and undermining the testimony of the stepson." *Id.* Although the State asked us to extend *Silva* to the punishment phase, we refuse to do so. If *Silva* were extended, every time the State introduces evidence of unadjudicated extraneous offenses at the punishment phase, before the defendant opens the door, any attempts to rebut this evidence by the defendant would cure the erroneous admission and render the error harmless. We refuse to hold that *Grunsfeld* may be subverted so easily.

### 2. The admission of the unadjudicated extraneous offenses resulted in harmful error.

■ *Grunsfeld* holds that we must now reverse because of the error in the proceeding below unless we determine beyond a reasonable doubt that the error made no contribution to the punishment. *Grunsfeld*, at 526. As in *Grunsfeld*, the evidence admitted in this case implicated that appellant committed numerous previous offenses which were sufficiently similar in detail to the sexual abuse for which appellant was convicted. The prosecutor highlighted these previous offenses in closing argument at the punishment stage:

> [J]ustice demands that he be punished for fondling her when she was only seven or eight years old repeatedly; that he be punished for the reprehensive, disgusting act of performing oral sex on [a] child; that he should be punished for that; that he should be punished for trying to penetrate her and not being physically able to because she was too small.
>
> He did not quit.
>
> Then he should be punished for fondling her breasts.
>
> Then he should be punished for raping her in December of 1987.

There can be no doubt that the evidence at the punishment stage was highly prejudicial and the jury's attention was drawn to it.

The State argues that the error did not contribute to the punishment because the jury only gave appellant eleven years confinement when they could have given him twenty. However, highly prejudicial evidence played such a large part in the punishment phase that we cannot say without a reasonable doubt the error did not contribute to the punishment. For this reason, we remand to the trial court for proceedings consistent with Tex.Code Crim.Proc. Ann. art. 44.29(b) (Vernon Supp.1993).

## V. CONCLUSION

Appellant's first point of error is overruled on the ground that he cannot successfully challenge the statute's alleged vagueness because the statute clearly applies to him. We overrule his second point of error because the victim is not an accomplice as a matter of law and the applicable statute does not require that her testimony be corroborated. Appellant's third point of error is overruled because the judge could exchange benches with another judge without a formal exchange order. Appellant's fourth point of error is sustained, pursuant to *Grunsfeld* and Tex.Code Crim.Proc.Ann. art. 37.07 (Vernon Supp.1993), since evidence of unadjudicated extraneous offenses was erroneously admitted at the punishment phase. Because we sustained appellant's fourth point of error, there was no reason to address his fifth point of error.

The judgment of the trial court is affirmed as it pertains to guilt. We reverse and remand the portion of the judgment relating to punishment.