Mario A. FLORES, Appellant,

v.

The STATE of Texas, Appellee.

No. 067–94.

Court of Criminal Appeals of Texas, En Banc.

Oct. 12, 1994.

---

Loren A. Detamore, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty., and Mary Lou Keel and Ricky Raven, Asst. Dist. Attys., Houston, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON STATE'S PETITION FOR DISCRETIONARY REVIEW

PER CURIAM.

The offense is murder; the punishment is confinement for seventy five years. The court of appeals affirmed the adjudication of guilt, but reversed and remanded as to punishment. *Flores v. State*, 866 S.W.2d 682 (Tex.App.—Houston [1st] 1993).[1]

■ The granted issue in this cause is whether the court of appeals correctly concluded that "even if evidence of the prior unadjudicated offense were admissible in the guilt stage to show consciousness of guilt, it was not admissible at the punishment phase."[2]

This case was tried in early October 1992; the trial court imposed sentence on October

---

1. The primary offense was committed September 7, 1991. Stripped of descriptive details, the operative facts determined by the court of appeals are as follows:

   At an early morning hour appellant, his cousin and friends were eating in a cafe; seated at a nearby table were two other males. Appellant, having given his .38 caliber semiautomatic handgun to a companion to hold, soon insulted one of the men, thus triggering a brawl between the respective sides.

   The companion pulled the handgun and shot in the air, believing that "like in the movies" the combatants would stop fighting. When they did not, he headed outside with the handgun. Appellant followed, retrieved the weapon and returned to the restaurant.

   Once inside, appellant saw that the insulted party was holding a knife to his cousin's throat; he yelled "Hey!" and shot at the party. The bullet struck the party in the head, and he died. Appellant with his cousin ran from the place and climbed into the backseat of their friend's car. Appellant told them he shot the deceased in the head, that it blew up like a watermelon, and he was proud of it.

   *Id.*, at 683.

2. On March 2, 1992, appellant was arrested at his home for the murder of a witness to the instant primary offense, who was then visiting

appellant. The deceased was found seated at the kitchen table, killed by a bullet that entered through his lower lip, punctured a jugular vein and exited the back of his neck. Pictures were taken of the body at the scene and in the morgue. Among other witnesses available to testify concerning this extraneous offense were police officers who responded to the scene, the doctor who conducted the autopsy and a friend of appellant. The latter would testify that about a week before the extraneous murder appellant had told the second victim that he "shouldn't have said what he said in the courtroom or whatever, that he was going to take him out." Also there was a statement appellant made to police.

   Appellant filed and presented pretrial a motion in limine and written objections to admissibility of extraneous offenses, particularly relating to this second murder (Tr. 31 and 41). The trial judge carried the former along until the prosecution offered its evidence. As to the latter, when the prosecution represented, "I don't anticipate it coming in unless he opens the door, and certainly, I'm going to put it in on punishment," the judge ruled, "For punishment you can do it, but ... not in the case in chief;" appellant then objected "to it coming in on punishment also," and the judge said, "We haven't got there yet, but right now its not coming in on the case in chief[.]" S.F. I Pretrial Motions 9–10 and 11–12.

7; appellant gave notice of appeal on October 7—all before the original decision of this Court in *Grunsfeld v. State*, 843 S.W.2d 521 (Tex.Cr.App.1992) (October 28, 1992; motion for rehearing denied December 9, 1992).

Later in the court of appeals the State "acknowledge[d] that extraneous offenses are not admissible at the punishment phase under *Grunsfeld*, [supra,] at 526," but it argued that "because the extraneous offense would have been admissible in the guilt stage of trial, it was not error to admit it during the punishment phase," citing *inter alia* the opinion of a panel of this Court in *Hargrove v. State*, 579 S.W.2d 238, at 239 (Tex.Cr.App. 1979). Based on its reading of *Hargrove*, supra, the court of appeals held that *Grunsfeld* overruled *Hargrove*. *Flores*, supra, at 684.[3] Accordingly, the court of appeals concluded that evidence of the extraneous offense was not admissible on punishment because under *Grunsfeld* it did not satisfy the definition of prior criminal record prescribed in Article 37.07, § 3(a) extant at the time of trial. *Ibid.*

The State still treats *Hargrove* as laying down a rule that, although not proffered, evidence "that could have been properly admitted at the guilt phase of trial" may be "tardily" admitted at the punishment phase, and urges us to hold that the court of appeals

erred in relying on *Grunsfeld* to bar admission of evidence that is otherwise admissible under the rubric of *Hargrove* and *Longoria*. PDR, at 4–5; Brief, at 3.[4]

We are satisfied that the *Hargrove* court simply denied a broad legal claim that any evidence outside the scope of Article 37.07, § 3(a) is inadmissible at the punishment stage. Obviously the Court did not regard the nature of the evidentiary matter significant to decision, for it never even identified the type of evidence to which defendant objected. See *Tyrone v. State*, 854 S.W.2d 153, at 157 (Tex.App.—Fort Worth 1993); PDR refused. By pointing out that Article 37.07, § 3(a) "is not an exclusive list of matters that may be shown at the punishment stage," *Hargrove*, at 239, the Court could be alluding to a myriad of unspecified matters admissible or not in the guilt stage of trial; indeed, its intendment is made even more ambiguous by its "see" citation to *Williams v. State*, 535 S.W.2d 637 (Tex.Cr.App.1976), wherein defendant pleaded guilty before a jury empaneled to assess punishment pursuant to Article 26.14, V.A.C.C.P. Thus at most, the Court simply rejected the proposition that the scope of former article 37.07, § 3(a), determines admissibility of evidence at punishment.

■ Accordingly, we conclude that the *Hargrove* court did not lay down a rule that

---

Further, before the punishment phase began, appellant renewed his objections to admission of extraneous offenses, which was overruled (5 S.F. 13); later he again objected and requested a running objection, the latter being granted (5 S.F. 20); finally, his request for such a running objection as to all witnesses on the matter was granted (5 S.F. 76). Appellant's Brief at 4–5. The State does not challenge those statements by appellant as to procedural facts in the record. See Tex.R.App.Pro., Rules 74(f) and 214(e).

3. The State relied too on *Longoria v. State*, 700 S.W.2d 274, (Tex.App.—Corpus Christi 1985), no PDR, which the court of appeals also held *Grunsfeld* overruled. On the point under consideration *Longoria* interpreted *Hargrove*. We will not determine whether the court of appeals was right because the State asserts that *Grunsfeld* does not control its ground for review. Moreover, the Legislature appears to have "overruled" *Grunsfeld* itself. See Article 37.07, § 3(a), as amended by Acts 1993, 73rd Leg., Ch. 900, §§ 5.05, 5.09, p. 3759, at 3760, applicable to offenses only on or after September 1, 1993, *id.*, at 3761; see also *Hoffman v. State*, 874 S.W.2d 138, at 140 (Tex.

App.—Houston [14th] 1994), PDR refused (such outcome inevitable from language regarding Tex. R.Cr.Evid., Rules 404 and 405).

4. *Hargrove* asserted evidence was admitted at the punishment stage that was beyond the scope of Article 37.07, § 3(a); he argued the State was "apparently attempting to bolster its case by introducing evidence which went to the guilt or innocence of the appellant." The Court disposed of the contention with a response at once dismissive and enigmatic, *viz:*

> "... We *decline* to hold it is error to admit evidence at the punishment stage that would have been admissible at the guilt stage, as appellant appears to propose that we should. Furthermore, the provision of Art. 37.07, supra, relied on by appellant is *not an exclusive list* of matters that may be shown at the punishment stage. ["See" citation omitted]."

*Id.*, at 239 (emphasis added).

In *Longoria* the court of appeals read *Hargrove* to affirmatively hold that "[e]vidence which would be admissible at the guilt stage is admissible at the punishment stage." *Id.*, at 276.

evidence which, though not offered, would be admissible at the guilt stage of trial is *ipso facto* "tardily" admissible at the punishment phase. It follows that the contrary reading of *Hargrove* by the court of appeals in *Longoria* must be and is rejected.[5]

In the final analysis, admissibility of punishment evidence in the instant cause must be determined under provisions of Article 37.07(a) then extant and pursuant to Texas Rules of Criminal Evidence, Rules 101(b), 1101(d)(1) and, e.g., 401–404(c), in light of judicial gloss. See *Miller–El v. State,* 782 S.W.2d 892, at 895–896 (Tex.Cr.App.1990); *Murphy v. State,* 777 S.W.2d 44, at 63 (Tex. Cr.App.1988) (plurality opinion on rehearing).

Therefore, the judgment of the court of appeals is affirmed.

CAMPBELL and WHITE, JJ., not participating.

---

**5.** We deem it worth observing that in rejecting the State's reliance on the *Longoria* court's interpretation of *Hargrove,* the Fort Worth Court of Appeals has accurately noticed that since *Longoria* was decided neither case has been relied on for the proposition advanced by the State. *Tyrone v. State,* supra, at 157. More recently the Houston [14th] Court of Appeals did much the same regarding the State's "tenuous argument;" on the strength of expressions from this Court that the Legislature intended "to segregate the guilt-innocence phase and the punishment phase and applying different considerations to these separate proceedings." *Hoffman v. State,* 874 S.W.2d 138, at 140 (Tex.App.—Houston [14th] 1994), PDR refused. In short, *Hargrove* and *Longoria* have no followings, only rejections.