

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NOS. WR-83,074-04 & WR-83,074-05

### EX PARTE MICHAEL CHARLES HILL, Applicant

### ON APPLICATIONS FOR WRITS OF HABEAS CORPUS
### IN CAUSE NOS. 26410 & 26411 IN THE 196TH JUDICIAL DISTRICT COURT
### FROM HUNT COUNTY

HERVEY, J., delivered the opinion of the Court in which RICHARDSON, NEWELL, KEEL, WALKER, and MCCLURE, JJ., joined. KELLER, P.J., filed a concurring and dissenting opinion. YEARY, J., filed a concurring and dissenting opinion in which SLAUGHTER, J., joined.

## O P I N I O N

Applicant, Michael Charles Hill, was convicted of second-degree felony sexual assault of a child and indecency with a child by contact. Based on an enhancement, he was automatically sentenced to life imprisonment for the sexual-assault offense, and his punishment range for the indecency offense was enhanced to that of a first-degree felony. The jury sentenced him to life imprisonment. This Court subsequently vacated Applicant's enhancing conviction on involuntary-plea grounds. Applicant now argues that

his enhanced life sentences are illegal and that he should be resentenced. We filed and set

his application for submission. The parties briefed the following issues,

(1)     Whether a defendant's failure to object at the time of trial to the use of a prior enhancing conviction forfeits error, particularly in the context of sex offenses; TEX. CODE CRIM. PROC. Art. 1.14(b); TEX. PENAL CODE § 12.42(c)(2), (g); see Ex parte Rich, 194 S.W.3d 508 (Tex. Crim. App. 2006); Ex parte Patterson, 969 S.W.2d 16 (Tex. Crim. App. 1998, op. on reh'g);

(2)     Whether vacating a prior enhancing conviction that was final at the time of the subsequent conviction and sentence affects the validity of the subsequent sentence, particularly in the context of sex offenses; Anderson v. State, 394 S.W.3d 531 (Tex. Crim. App. 2013);

(3)     Whether the use of a prior enhancing conviction that does not increase the punishment range causes harm; see Ex parte Parrott, 396 S.W.3d 531 (Tex. Crim App. 2013); and

(4)     Whether a claim concerning the use of a prior enhancing conviction, when that conviction is later vacated, is barred by the equitable doctrine of laches.

The habeas court recommends that we deny relief. We conclude that Applicant is

entitled to be resentenced for aggravated sexual assault but not indecency with a child.

## I. PROCEDURAL HISTORY

Applicant was convicted of sexual assault of a child and indecency with a child by

contact (the primary offenses), both second-degree felonies. TEX. PENAL CODE

§ 22.011(a)(2). The punishment range for a second-degree felony is two to twenty years'

imprisonment. *Id.* § 12.33(a). The State, however, sought enhanced sentences based on a

previous aggravated-sexual-assault conviction from 2000 in Dallas County (the enhancing

conviction), which the jury found to be true. *Id.* § 22.021. The enhanced punishment for sexual assault of a child was fixed by law at life imprisonment. *Id.* § 12.42(c)(2). Applicant's punishment range for the indecency offense was elevated into the first-degree felony range, subjecting him to confinement for five to ninety-nine years or life. *Id.* § 12.42(b). The jury sentenced him to life imprisonment, and the judge stacked the sentences,

|  | **Primary Offenses (2012)** |  |
|---|---|---|
| Sexual Assault of a Child (2nd degree felony) | TEX. PENAL CODE §§ 22.011(a)(2), 12.42(c)(2) | Automatic life imprisonment |
| Indecency by Contact (2nd degree felony) | TEX. PENAL CODE §§ 21.11, 12.42(b) | Life imprisonment |
|  | **Enhancing Offense (2000)** |  |
| Aggravated Sexual Assault (2nd degree felony) | TEX. PENAL CODE § 22.021(a)(1) |  |

Applicant appealed to the Sixth Court of Appeals, arguing that the evidence was legally insufficient and that the State failed to give proper notice of its intent to enhance his punishments with a prior felony conviction.[1] The court overruled both points of error, and Applicant did not file a petition for discretionary review in either case. Because the facts pertaining to the offenses are not necessary to the resolution of this case, we do not

---

[1]The court of appeals issued an opinion in each case. *Hill v. State*, No. 06-12-00094-CR, 2013 WL 69239, at *1 (Tex. App.—Texarkana Jan. 8, 2013, no pet.) (mem. op., not designated for publication) (indecency with a child by contact); *Hill v. State*, No. 06-12-00095-CR, 2013 WL 69248, at *3 (Tex. App.—Texarkana Jan. 8, 2013, no pet.) (mem. op., not designated for publication) (sexual assault of a child).

discuss them.

## II. LACHES

The purpose of the laches doctrine is "to consider whether an applicant has slept

on his rights and, if he has, how that has affected the State, and whether, in light of the

delay, it is fair and just to grant him relief." *Ex parte Perez*, 398 S.W.3d 206, 218–19

(Tex. Crim. App. 2013). If laches applies, we will not consider an applicant's claims and

will deny relief. *Ex parte Saenz*, 491 S.W.3d 819, 826 (Tex. Crim. App. 2016). Laches

does not apply when,

- an applicant's delay was not unreasonable because it was due to a justifiable excuse or excusable neglect;

- the State would not be materially prejudiced as a result of the delay; or

- the applicant is entitled to equitable relief for other compelling reasons, such as new evidence that shows he is actually innocent of the offense or, in some cases, that he is reasonably likely to prevail on the merits.

*Perez*, 398 S.W.3d at 218. When determining whether laches applies, we examine each

case on its own facts, considering the totality of the circumstances. *Id.* at 216.

### a. Challenging the Enhancing Conviction

According to postconviction counsel, he was hired about six months after

Applicant's enhanced life sentences were affirmed on direct appeal, and he immediately

began investigating the enhancing conviction. In September 2014, Applicant filed his

initial habeas application. Postconviction counsel filed a "bare bones" application in

which he sought and obtained access to the Dallas County District Attorney's work product.[2] (Counsel claimed that the district attorney at the time required a court order before allowing defense counsel to examine the State's trial work product as part of a postconviction investigation.) According to counsel, he discovered evidence of a *Brady* violation and ineffective assistance of counsel, and he began collecting records to support those claims. He also asserts that he was finally able to locate the victim in November 2014 and that she signed an affidavit recanting her allegations. Counsel subsequently asked this Court to dismiss the application for further investigation. We dismissed the application in April 2015.[3]

In December 2015, Applicant filed a second habeas application in which he argued that he was actually innocent based on the victim's recantation. Approximately six weeks after the application was filed, the Dallas County District Attorney's Office's Conviction Integrity Unit (Unit) contacted counsel and offered to review Applicant's case. Applicant agreed and asked this Court to dismiss his second application, which we did in June 2016.

---

[2] Applicant alleged in his application that,

> Over the last few years, there has been an alarming number of cases in Dallas County where suppression of exculpatory evidence by prosecutors or law enforcement agents has been discovered. These cases predated the current District Attorney's administration. Based on this, there is a reasonable possibility that a review of the prosecutor's file will reveal exculpatory evidence not turned over to the defense. The exculpatory evidence found in the previous cases was in the prosecutors work-product so a review of the work-product is necessary.

[3] We actually dismissed his habeas application because he had discharged his five-year sentence for the enhancement offense.

In September 2016, Applicant filed a third habeas application, arguing (1) that he was actually innocent based on the postconviction recantation, (2) that he was entitled to a new trial because the State failed to disclose the victim's pretrial recantation, and (3) that his guilty plea was involuntary because he would not have pled guilty had the pretrial recantation been disclosed. In December 2016, we remanded the case for an evidentiary hearing, and while the case was on remand, the victim recanted her postconviction recantation from November 2014. Applicant subsequently filed an amended habeas application in which he abandoned the actual-innocence claim based on the postconviction recantation. He continued to advance, however, the *Brady* and involuntary-plea claims based on the suppressed pretrial recantation. He also added two additional claims: (1) ineffective-assistance-of-counsel claim based on trial counsel's failure to obtain the medical records documenting the pretrial recantation[4] and (2) another *Brady* allegation based on the State's failure to disclose that the victim lied to police on

---

[4]Applicant alleged that his,

> counsel failed to investigate [his] case by failing to obtain the complainant's available medical records, [Applicant] requested that counsel obtain the complainant's medical records. The medical records were available and contained exculpatory evidence regarding the complainant's recantation of her allegations against [Applicant]. Had [Applicant] been aware of the recantation he would not have entered a plea of guilty and instead would have insisted upon going to trial. Trial counsel's failure to request the medical records in this matter fell below an objective standard of reasonableness and [Applicant] was prejudiced by trial counsel's deficient performance.

multiple occasions.[5] Over one year after we remanded the case, the habeas court returned the record to this Court in March 2018. The habeas court recommended that we grant relief on Applicant's involuntary-plea claim in light of the *Brady* violations. We did so in May 2018 and set aside Applicant's enhancing conviction.

### b. Challenging The Primary Offenses

In November 2018, postconviction counsel filed two writ applications, one for each conviction, arguing that his enhanced life sentences are illegal and that he received ineffective assistance of counsel because, among other things, trial counsel failed to investigate the validity of the enhancement conviction from 2000. In June 2019, we remanded the case again. In our order, we agreed that Applicant's failure to object at trial did not forfeit his illegal-sentence claims and that his enhanced life sentences are now known to be illegal, but we remanded the case one more time to determine whether Applicant's illegal sentences harmed him. *Ex parte Hill*, Nos. WR-83,074-04 & WR-83,074-05, 2019 WL 2607173, *1 (Tex. Crim. App. June 26, 2019) (per curiam) (not

---

[5]In the amended application, Applicant cited the pretrial recantation and additionally alleged that,

> Additionally, a report from the Dallas Police Department indicates that the complainant lied to police about having washed the sheets after the incident and lied about the [Applicant]'s whereabouts during the initial report to law enforcement. Evidence regarding the complainant's credibility is exculpatory. The report was in the possession of the Dallas Police Department, the investigating agency and State's agent for purposes of *Brady v. Maryland*. Yet, the report was not disclosed to Applicant. Applicant would not have entered a guilty plea if he had known of the recantation and evidence of complainant's lies to law enforcement.

designated for publication) (citing *Parrott*, 396 S.W.3d at 533).

The habeas court found that Applicant's indecency-with-a-child sentence could still be enhanced into the first-degree felony punishment range using a prior second-degree felony theft conviction but that Applicant's sexual-assault-of-a-child sentence could no longer be enhanced to automatic life imprisonment. It could only be punished as a first-degree felony. After the record was returned to this Court, we filed and set Applicant's application for submission.

### c. Analysis

The parties agree that Applicant has timely raised his illegal-sentence claims. The State argues, however, that we should nonetheless apply laches because of Applicant's years of delay in seeking to have his enhancement conviction set aside. Applicant responds that his delay in challenging that conviction is no longer the issue because this Court has already overturned that conviction without mentioning laches. The only issue now, Applicant contends, is whether his illegal-sentence claims were timely raised.

We agree with Applicant. While we have said that all equities of the case should be considered, the equities of *this case* weigh in favor of not applying laches to Applicant's illegal-sentence claims. *Perez*, 398 S.W.3d at 217. The appropriate time to apply laches because of Applicant's delay in challenging his enhancement conviction was before we reached the merits of his claims and set it aside, not now when Applicant is raising different claims less than six months after they became available challenging

sentences that he has never challenged. Further, even if Applicant had unreasonably delayed seeking relief from his enhanced sentences, there is no record evidence to support that the State would be materially prejudiced as the result of Applicant's six-month delay. *Id.* Also, there is no evidence that memories have faded or evidence has been lost or is otherwise unavailable because of the passage of six months' time. *Id.* at 216 (stating that diminished memories and diminished availability of State's evidence often occurs beyond five years after a conviction becomes final) (citing *In re Steptoe*, 132 S.W.3d 434, 437–39 (Tex. Crim. App. 2004) (per curiam) (Cochran, J., dissenting); *McCray v. Florida*, 699 So.2d 1366,1368 (Fla. 1997)).

The State contends that it "will be left to argue [at resentencing] for a sentence between five years to ninety-nine years or life for a now thirteen year old offense and have only a theft conviction and a state jail conviction to present in punishment." It is true that Applicant's sexual-assault-of-a-child sentence cannot be enhanced to automatic life imprisonment based on his actual criminal history, but if that controlled the laches inquiry, laches would apply to all illegal-sentence claims no matter how short the delay in challenging the sentences if the applicant's actual criminal history did not support the enhanced punishment range. That reasoning subverts the proper scope of the laches inquiry,[6] and it is at odds with *Parrott*, 396 S.W.3d at 536, in which we held that an applicant can show harm from an illegal sentence by showing that he has no other

---

[6]The State's argument is akin to saying that laches should apply because the State would be harmed if Applicant is resentenced based on his actual criminal history.

conviction to support the punishment range within which he was sentenced.[7] If the State

is correct, *Parrott* and its progeny are meaningless because no applicant harmed by an

illegal sentence could ever prove harm. Laches would prevent consideration of the claim.

After reviewing the parties' arguments and the entire record in this case, we conclude that

the totality of the circumstances weigh in favor of not applying laches to Applicant's

illegal-sentence claims.

### III. ILLEGAL SENTENCE CLAIMS

The next issues are whether Applicant forfeited his illegal-sentence claims when

he failed to object at trial, and if not, whether his sentences are illegal. To resolve those

issues, we must first review two different, but closely related, lines of cases because both

parties rely on them in their briefs: illegal-sentence claims based on invalid enhancements

(*Rich*) and invalid-enhancement claims (*Hill*, *White*, and *Patterson*). We begin with the

former.

#### a. Precedent

*1. Illegal Sentence Claims*

In *Rich*, the applicant pled guilty to felony driving while intoxicated (DWI) and

was sentenced based on two enhancements to a term of 25 years' confinement pursuant to

---

[7]*Id.*; *see, e.g.*, *Ex parte Rodgers*, 598 S.W.3d 262 (Tex. Crim. App. 2020) (denying relief on an illegal-sentence claim because applicant was not harmed under *Parrott*; not applying laches); *Ex parte Thompson*, No. WR-85,274-01, 2016 WL 4938348 (Tex. Crim. App. Sept. 14, 2016) (per curiam) (not designated for publication) (granting relief on an illegal-sentence claim under *Parrott* because applicant did not have another conviction that would support the punishment range in which he was sentenced; not applying laches).

a plea bargain. *Rich*, 194 S.W.3d at 510 (citing Tex. Penal Code 12.42(d) (providing for an enhanced punishment range of between twenty-five to ninety-nine years' confinement)). The applicant did not appeal. *Id.* at 509. He argued for the first time in his initial writ application that his sentence was illegal because one of his enhancing convictions had been reduced to a misdemeanor. *Id.* at 510. We held that his illegal-sentence claim was not forfeited, explaining that we have long allowed such claims to be raised for the first time postconviction and that the appellate record did not reveal the problem with the applicant's sentence. *Id.* at 513. We further explained that, when deciding whether a sentence is illegal, the issue is "the legality of the punishment as it now stands" even though the trial court's reasoning and determination might have been correct according to the facts before it at the time of sentencing, and that the applicant's sentence was illegal because it exceeded the maximum term of confinement by five years. *Id.* at 512 In addressing harm, we noted that the applicant's actual criminal history did not support the enhanced punishment range within which he was sentenced, and there was a great disparity between the 25-year sentence he received and "the possible sentences within the proper range of punishment." *Id.* at 510, 514. His sentence was "more than ten times the minimum, and five years more than the maximum . . . ." *Id.* at 512–13.

### 2. Improper Enhancement Claims

In *Hill*, the appellant was convicted of felony theft and his punishment was enhanced by two prior felony convictions. *Hill v. State*, 633 S.W.2d 520, 520 (Tex. Crim.

App. [Panel Op.] 1981). He subsequently appealed his theft conviction and filed a writ of habeas corpus. *Id.* On appeal, he argued that the his theft conviction should be reversed because one of the enhancement convictions was defective. *Id.* at 523 (op. on reh'g). On writ, he argued that the same enhancement was void because his counsel was not present when he was sentenced. *Id.* Notably, the applicant never argued that his sentence was illegal, only that one of the enhancements was improper. In a consolidated opinion, we granted relief and set aside his enhancing conviction, reversed his conviction for the primary offense, and remanded the case for a new trial. *Id.* at 520. On rehearing, however, we reversed course and held that a defendant cannot raise for the first time on direct appeal an improper-enhancement claim unless he objected at trial. *Id.* at 525 (op. on reh'g); *but see Ex parte Cashman*, 671 S.W.2d 510, 513 (Tex. Crim. App. 1983) (Clinton, J., dissenting) ("*Hill*'s principal vice lies in the breadth of its stated holding."). We reasoned that, when it comes to improper-enhancement claims, "[i]f an objection is timely lodged on proper grounds, the trial court can finally determine, at trial, whether the prior conviction was permissibly obtained and whether it is admissible as evidence." *Hill*, 633 S.W.3d at 525.

In *Ex parte White*, 659 S.W.2d 434 (Tex. Crim. App. 1983), we recognized an exception to the *Hill* improper-enhancement, contemporaneous-objection rule: it did not apply when an invalid enhancement rendered the indictment or information void because the trial court never acquired jurisdiction. *Id.* at 435. A few years later, however, we held

in *Patterson* that *White* was abrogated by the combination of a constitutional amendment to Section 12(b) of Article V of the Texas Constitution and an amendment to Article 1.14(b) of the Texas Code of Criminal Procedure.[8] *Patterson*, 969 S.W.2d at 19 (op. on reh'g). The constitutional amendment substantially broadened what constitutes an indictment or information, requiring only that the instrument "charg[e] a person with the commission of an offense," and Article 1.14(b) of the Texas Code of Criminal Procedure was amended to provide that a defendant waives any procedural or substantive defect in an indictment or information unless he objects before the trial on the merits commences.[9] *Id.* at 19, 20; *see* TEX. CODE CRIM. PROC. art. 1.14(b). We concluded that the applicant in *Patterson* was not entitled to relief because, even though the indictment was voidable, he failed to object at trial. *Patterson*, 969 S.W.2d at 20 (op. on reh'g).

### b. Applicant Did Not Forfeit His Illegal Sentence Claims

The State argues that our improper-enhancement cases control the outcome of the

---

[8]Article 1.14(b) states that,

> If the defendant does not object to a defect, error, or irregularity of form or substance in an indictment or information before the date on which the trial on the merits commences, he waives and forfeits the right to object to the defect, error, or irregularity and he may not raise the objection on appeal or in any other postconviction proceeding. Nothing in this article prohibits a trial court from requiring that an objection to an indictment or information be made at an earlier time in compliance with Article 28.01 of this code.

TEX. CODE CRIM. PROC. art. 1.14(b).

[9]To determine if an instrument is an indictment, we look to the face of the charging instrument to determine if it is clear enough to give a defendant adequate notice of the charge against him. *Jenkins v. State*, 592 S.W.3d 894, 901 (Tex. Crim. App. 2018).

preservation issue, specifically *Patterson*, and that Applicant forfeited his illegal-sentence claims because he failed to object at trial. It also argues that *Rich* is distinguishable because the applicant's sentence in that case was illegal when it was imposed. Applicant responds that *Rich* controls and that, in granting relief, this Court never mentioned the fact that the applicant's sentence was illegal when it was imposed. Rather, it relied on a determination of the legality of the sentence postconviction. He further contends that, if *Rich* does not control, we should overrule *Hill* and its progeny. He asserts that no judge can "finally determine" at trial whether a conviction was "permissibly obtained" and that, even if it could do so, that would encroach on this Court's sole authority to grant postconviction habeas relief. *See* TEX. CODE CRIM. PROC. Chp. 11; *see Cashman*, 671 S.W.2d at 513 (Clinton, J., dissenting).

Just last year, this Court reaffirmed that "a claim of illegal sentence based upon an invalid enhancement is cognizable in post-conviction habeas corpus proceedings . . . ." *Rodgers*, 598 S.W.3d at 267 (citing *Parrott*, 396 S.W.3d at 538); *Ex parte Pue*, 552 S.W.3d 226, 228 n.7 (Tex. Crim. App. 2018) (same). Additionally, our research shows that, although we have routinely followed *Rich*, we have not mentioned *Hill* or any of our improper-enhancement cases in those decisions, nor have we have referred to our illegal-sentence jurisprudence in our *Hill* line of cases. In fact, it appears that this Court has not relied on *Hill* or its progeny in the 23 years since *Patterson* was decided.[10] Specific to this

---

[10]In *Burg v. State*, 592 S.W.3d 444, 449 (Tex. Crim. App. 2020), and without reference to *Hill* or its progeny, we stated that Rule 33.1 of the Texas Rules of Appellate Procedure governing

case, we also note that the illegality of Applicant's sentence, like the illegality of the applicant's sentence in *Rich*, was not ascertainable from the appellate record, becoming apparent only years later when this Court overturned his enhancement conviction on involuntary-plea grounds due to a *Brady* violation. *Rich*, 194 S.W.3d at 510. The foregoing leads to the following two conclusions: *Rich* controls Applicant's illegal-sentence claims based on an improper enhancement, and we need not overrule *Hill* and its progeny because they do not apply to illegal-sentence claims based on an improper enhancement.

### c. The Vacature of an Enhancement Conviction Can Render the Sentence for the Primary Offense Illegal

Next, the State argues that, even if Applicant can bring his claims for the first time on writ, his sentences are not illegal because, at the time he was sentenced, his enhancing conviction had not yet been set aside. For support, it cites our decision in *Ex parte Jimenez*, 361 S.W.3d 679 (Tex. Crim. App. 2012). We disagree that *Jimenez* applies. In that case, the applicant was convicted of felon in possession of a firearm. *Id.* at 680. Later, this Court set aside the felony conviction relied on by the State. *Id.* at 681. The applicant then filed an application for a writ of habeas corpus and argued that his felon-in-possession-of-a-firearm conviction was void because the State could no longer prove

---

error preservation "does not bar review of a claim that a sentence is illegal due to the fact that it is outside the maximum or minimum range of punishment." *Burg v. State*, 592 S.W.3d 444, 449 (Tex. Crim. App. 2020). It appears that this holding would be in direct contradiction to *Hill*, if *Hill* applied to illegal-sentence claims.

that he was a convicted felon when he possessed the firearm. *Id.* We held that the conviction was not void because the State was required to prove that the applicant was a convicted felon when he possessed the firearm and that it had no continuing duty to be able to prove each essential element of the offense in perpetuity. *Id.* at 684. *Rich*, on the other hand is directly on point, and it states that when dealing with an illegal-sentence claim based on an improper enhancement, we determine "the legality of the punishment as it now stands," not as it stood at some other time. *Rich*, 194 S.W.3d at 512.

### d. Applicant's Sentences Are Now Known To Be Illegal

"A sentence that is outside the maximum or minimum range of punishment is unauthorized by law and therefore illegal." *Rodgers*, 598 S.W.3d at 267 (citing *Mizell v. State*, 119 S.W.3d 804, 806 (Tex. Crim. App. 2003)). To determine if a sentence exceeds the maximum or minimum range of punishment authorized by law, we compare the enhanced sentence that an applicant received to the range of punishment in which the applicant would have been sentenced without the improper enhancement. *Parrott*, 396 S.W.3d at 533; *Rich*, 194 S.W.3d at 510–12. If the enhanced sentence is outside that range of punishment, the sentence is illegal. *Rodgers*, 598 S.W.3d at 267 (citing *Mizell*, 119 S.W.3d at 806).

Here, both of Applicant's sentences are illegal because they exceed the maximum possible terms of confinement for a second-degree felony. Sexual assault of a child and indecency with a child by contact as alleged in this case are second-degree felonies. TEX.

PENAL CODE §§ 22.011(f), 21.11(d). A second-degree felony carries a range of confinement between two and twenty years. *Id.* § 12.33(a). Based on an enhancement, Applicant was automatically sentenced to life imprisonment for sexual assault of a child and was sentenced by the jury to life imprisonment for indecency with a child by contact. *Id.* §§ 12.42(b); 12.42(c)(2). Applicant's life sentences are illegal because they exceed what he could have received from the jury without the enhancement—a maximum of twenty years' confinement. *Id.* § 12.33.

### e. Applicant Was Harmed by His Sexual Assault of a Child Illegal Sentence But Not His Indecency with a Child Illegal Sentence

*1. Sexual Assault of a Child*

We recognized in *Parrott* that an applicant is not harmed by an illegal sentence if his actual criminal history supports the range of punishment in which he was sentenced. *Parrott*, 396 S.W.3d at 537. The State and Applicant agree that Applicant was harmed by his automatic life sentence for sexual assault of a child. The State argues that, at most, Applicant's punishment could have been enhanced into the first-degree felony punishment range, and even though that range includes life as a term of punishment, the possibility of a life sentence and an automatic life sentence are not the same "punishment range" for purposes of an illegal-sentence analysis.[11] We agree. Section 12.42(c)(2) is a

---

[11]The State also argues that, if we find that Applicant's sentences are illegal, he was probably harmed under *Alleyne v. United States*, 570 U.S. 99 (2013) because the enhancement increased the minimum punishment. While the enhancement did increase the minimum punishment, *Alleyne* dealt with the federal sentencing guidelines and whether enhancements are considered fact issues to be submitted to the jury under the Sixth and Fourteenth amendments. *Id.*

special enhancement provision that does not enhance a defendant's sentence into a punishment range. TEX. PENAL CODE § 12.42(c)(2). Rather, it fixes the punishment by law at automatic life imprisonment and deprives an applicant from being sentenced by a jury of his peers, which would have been able to consider the full range of punishment.[12] Further, we note that "[a]n inmate serving a sentence under Section 12.42(c)(2), Penal Code, is not eligible for release on parole until the actual calendar time the inmate has served, without consideration of good conduct time, equals 35 calendar years," but "a defendant is eligible for parole in 15 years when assessed an "ordinary" life sentence. TEX. GOV'T CODE §§ 508.145(c), 508.145(f). This is sufficient to show *Parrott* harm because Applicant's actual criminal history cannot support the automatic life sentence he received under Section 12.42(c)(2); *Parrott*, 396 S.W.3d at 537.

### 2. Indecency with a Child

Applicant argues that whether he was harmed by his illegal indecency-with-a-child sentence is more complicated. It is undisputed that Applicant cannot show *Parrott* harm because his actual criminal history supports the first-degree felony punishment range in which he was sentenced. But Applicant argues that he was nonetheless harmed because

---

at 111–12. This case is about illegal sentences under state law, not federal law. Further, the sexual-assault conviction was submitted to the jury has a fact issue, and the jury found it true.

[12]If Applicant had been sentenced for a first-degree felony, he could have been sentenced to as little as five years' confinement. TEX. PENAL CODE § 12.32; *see Rich*, 193 S.W.3d at 514 n.12 (noting the great disparity between the applicant's twenty-five year sentence and the punishment range within which he should have been sentenced of two to twenty years' confinement).

the "replacement" conviction was for a dissimilar, less reprehensible offense—felony

theft—and he points out that the State heavily relied on the sexual nature of his

aggravated-sexual assault enhancement during closing arguments, asking the jury to give

him the maximum terms of confinement because he was a serial sex offender. The State

argued,

> Why is the State asking for two life sentences? Is that a lot? Yeah, it's a lot.
> Sure. It's a lot, and it's not asked for lightly. But please think about the
> circumstances of this case when you decide the punishment. This man was
> in prison for aggravated sexual assault of a child under 14, a 12 year-old,
> his niece. He goes to prison for it, pleads guilty, goes to prison, gets
> released, is a registered sex offender and then molests his daughter, twice.
> You've convicted him of it. Two lives irreparably changed by one
> defendant. What's the value of that? You have to decide the value of what's
> happened to these kids.

Applicant also directs us to *Tyrone v. State*, 854 S.W.2d 153, 160 (Tex. App.—Fort

Worth 1993, pet. ref'd) for support, asserting that the court of appeals found that

extraneous offenses erroneously admitted at punishment were harmful because "the

evidence . . . implicated that appellant committed numerous previous offenses which were

sufficiently similar in detail to the sexual abuse for which appellant was convicted," and

the State emphasized the previous convictions at the punishment hearing. *Id.* at 160.

Applicant further argues that the jury was influenced to assess a life sentence for

indecency with a child because it knew that Applicant would be automatically sentenced

to life imprisonment for sexual assault of a child if it found the enhancement true, which

it did.

We conclude that *Parrott* controls. The harm associated with an illegal sentence turns on only whether an applicant's sentence is within the range set by law, and here, Applicant cannot show that he was harmed by his illegal sentence for indecency with a child because his actual criminal history supports the first-degree felony punishment range in which he was sentenced.

## IV. CONCLUSION

Applicant is not entitled to a new punishment hearing on his conviction for indecency with a child, but he is entitled to a new punishment hearing on his conviction for aggravated sexual assault of a child, and we remand this cause for that purpose.

Delivered: October 20, 2021

Publish