**James Marcus MARABLE, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 6–91–090–CR.**

Court of Appeals of Texas,
Texarkana.

Sept. 22, 1992.

Discretionary Review Refused
Jan. 27, 1993.

Jimmy White, Mount Pleasant, Clifton Holmes, Holmes Law Office, Longview, for appellant.

Frank Long, Dist. Atty., Sulphur Springs, for the State.

Before CORNELIUS, C.J., and BLEIL and GRANT, JJ.

## OPINION

GRANT, Justice.

James Marable appeals from a conviction for possession of between 50 and 200 pounds of marihuana.

Marable contends that the trial court erred by failing to sustain his challenge for cause of a potential juror, by admitting prior trial testimony of Glenn Bolt, by allowing the State to introduce evidence of an extraneous offense, and by overruling his objection to the court's failure to charge the jury on "mere presence." He further contends that the evidence was insufficient to support the verdict.

James Marcus Marable was arrested in August 1989 for possession of marihuana. He was initially tried in January 1990 and convicted. That conviction was reversed and remanded by this Court on November 13, 1990. *Marable v. State*, 802 S.W.2d 3 (Tex.App.–Texarkana 1990, pet. ref'd). He was retried in September 1991 and found guilty of the same offense. The jurors in the first trial assessed punishment at fifty years' confinement. The jurors in the second trial assessed punishment at ninety years' confinement and a $50,000 fine.

In August of 1989, while flying in a light plane, a game warden saw land with vegetation he recognized as marihuana. Officers obtained a search warrant and searched the property. They found two fields of marihuana. The plants were approximately ten feet tall, planted in rows, and were partially screened from view by weeds and a planted row of corn. The officers harvested the plants, obtaining approximately ninety pounds of marihuana. The two patches contained 1,527 plants.

The marihuana patches were located on property rented by Mary Marable, the daughter of James and Virginia Marable. All of the Marables lived on the property, which consisted of about seventy acres. The largest patch of marihuana was located about 800 feet from the Marables' residence, approximately 20 feet behind a barn. A three-wheeled vehicle was parked beside the Marables' mobile home, and witnesses described a well-worn trail from the house,

around the barn to the marihuana patch. The officers' search revealed 1,500 to 2,000 used starter pots near the barn. Also near the barn was a homemade sprinkler system that had been painted in camouflage colors. The largest of the two patches was clearly visible from the barn.

■ We shall first discuss Marable's contention that the trial court erred by failing to sustain his challenge for cause against venire person Pamplin under TEX. CODE CRIM.PROC.ANN. art. 35.16(a)(10) (Vernon 1989).[1] Under this section, the proponent of a challenge for cause must show that a prospective juror has established in his mind a conclusion as to the guilt or innocence of the defendant and that this conclusion will influence his verdict. *Harris v. State*, 784 S.W.2d 5, 25 (Tex.Crim.App.1989).

■ During voir dire, counsel for Marable asked the juror preceding Pamplin if articles that the juror had read in the newspaper were the kind of thing that would not influence the juror's verdict. This juror answered yes. Counsel then asked Pamplin, and she also answered yes. He asked some follow-up questions to Pamplin about where she had learned about the case. Then counsel asked Pamplin:

What you know from hearsay, has it been the kind of information that has caused you to form some kind of opinion or conclusion, whatever that might be, *about any factual matters?*

THE JUROR: It's hard not to have an opinion, but I feel like I could listen to

what was being said and I could form an opinion on that fact alone.

MR. HOLMES [counsel for defendant]: Let me ask you this: From what you have heard, read, or whatever, would it take some evidence to the contrary to remove that from your mind?

THE JUROR: Yes, sir.

MR. HOLMES: In other words, you would have to hear something to the contrary, then, before it would remove it from your mind?

THE JUROR: Probably.

MR. HOLMES: And if you didn't hear anything to the contrary of whatever it is that you read or heard would that influence you in arriving at your verdict?

THE JUROR: Probably.

. . . .

MR. HOLMES: . . . Generally it had to do with how much information you had. If you didn't hear something to the contrary of what you had already heard, would that influence your verdict? Would that be the kind of information that would influence you in your verdict?

THE JUROR: Yeah.

(Emphasis added.)

Later in the voir dire, the court asked Pamplin:

Did you tell us that based on what you heard and read that you had formed an opinion?

THE WITNESS (the Juror): No, I have not formed an opinion. I have heard a lot that I would have to hear something differently to convince me that it was wrong.

---

1. **Article 35.16 Reasons for challenge for cause**

(a) A challenge for cause is an objection made to a particular juror, alleging some fact which renders him incapable or unfit to serve on the jury. A challenge for cause may be made by either the state or the defense for any one of the following reasons:

. . . .

(10) That from hearsay, or otherwise, there is established in the mind of the juror such a conclusion as to the guilt or innocence of the defendant as would influence him in his action in finding a verdict. To ascertain whether this cause of challenge exists, the juror shall first be asked whether, in his opinion, the conclusion so established will influence his verdict. If he answers in the affirmative,

he shall be discharged without further interrogation by either party or the court. If he answers in the negative, he shall be further examined as to how his conclusion was formed, and the extent to which it will affect his action; and, if it appears to have been formed from reading newspaper accounts, communications, statements or reports or mere rumor or hearsay, and if the juror states that he feels able, notwithstanding such opinion, to render an impartial verdict upon the law and the evidence, the court, if satisfied that he is impartial and will render such verdict, may, in its discretion, admit him as competent to serve in such case. If the court, in its discretion, is not satisfied that he is impartial, the juror shall be discharged.

THE COURT: Okay. Let me ask you this: Do you understand the concept that you've got to base the verdict on what you hear here in the courtroom?

THE WITNESS: Yes.

....

THE COURT: Is that something that has caused you to form an opinion about her or about her father?

THE WITNESS: Father.

THE COURT: And is that an opinion that would influence your verdict in the case, or would you base your verdict on the evidence that [you] hear here in the courtroom?

THE WITNESS: No, I would base my verdict on the evidence.

....

THE COURT: In other words, you formed an opinion about some of the matters, perhaps, in the case, and what you're saying is if the evidence reveals that, if the State hasn't proved their case you're going to find the defendant not guilty?

THE WITNESS: Right, that's what I'm saying.

If it had been established that Pamplin had reached a conclusion or opinion as to the guilt or innocence of Marable and that this conclusion would influence her verdict, she should have been discharged without further interrogation by either party or the court. TEX.CODE CRIM.PROC.ANN. art. 35.16(a)(10). A careful reading of the voir dire questions to Pamplin shows that she was asked if she had formed an opinion or conclusion about any factual matters, but was never asked whether she had an formed an opinion or conclusion about Marable's guilt or innocence.

The record of the voir dire examination of Pamplin did not establish that she had reached a conclusion as to the guilt or innocence of Marable that would have influenced her verdict. This question was not presented to Pamplin. Therefore, the trial judge was not required under the article to discharge her without further interrogation, and upon further interrogation by the judge, the court determined that Pamplin could set aside anything that she had heard previously about the case and base her decision solely upon the evidence introduced in the case. This point of error is overruled.

■ Marable next contends that the trial court committed reversible error by admitting the testimony of Glenn Bolt from the previous trial of this cause. Bolt's testimony had been pivotal at the prior trial, but at the retrial Bolt testified that he had no substantive recollection of the relevant conversations and events recounted at the previous trial.[2] After Bolt had been shown to have no memory on the relevant matter to

2. Relevant portions of Bolt's testimony at the retrial are as follows:

Q While he (Marable) was within the Franklin County Jail did you have an occasion to talk to him?
A Yes, I have but, you know, it's been two years ago and I don't remember everything that was said. I don't remember it all.
Q Do you recall having a conversation with the defendant about marihuana?
A I simply asked him what he was in for, yeah.
Q And what did he tell you?
A He said that the law had came out and arrested him for possession of marihuana. That's all.
Q Did he make any other statements to you about that marihuana?
A Not that I recall.
....
Q Mr. Bolt, do you recall having a conversation with the defendant?
A I don't remember what I said or what was said.

Q Do you recall that there was a conversation?
A Yeah, I remember talking to the man, asking him what he was in for, stuff like that.
Q Do you recall what was said during those conversations?
A No. He just said he was in—they had picked him up that morning for possession of marihuana or something like that.
Q Did you have some further discussions with him?
A Not that I remember, no.
....
Q Do you recall during any of those conversations in the jail you asking him to do something for you?
A No, sir, I don't.
Q Do you recall talking to the defendant about bringing marihuana to the jail?
A No, sir.
....
Q Do you recall seeing the defendant come up to the courthouse jail area in his van?
A No, sir, I don't.

which he had previously testified, the court ruled that the prior testimony could be introduced into evidence pursuant to Tex. R.Crim.Evid. 804(b)(1). This rule provides that former testimony given by a witness at the same or different proceeding is not excluded if the party against whom the testimony is offered had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination. To qualify under this exception, the witness must be unavailable. Rule 804(a) of the Rules of Criminal Evidence provides that unavailability as a witness includes a situation in which the declarant testifies to a lack of memory of the subject matter of his previous statement.

Bolt's testimony at the second trial showed a lack of memory of the relevant matters. At the first trial, James Marable was on trial for the same offense as in the present case. There were two other defendants in the first trial who were not on trial at the second trial. Counsel contends that the presence of the other parties may have created a different motive in cross-examining this witness than that which existed in the second trial. A careful review of the record does not provide any basis for such a distinction. Bolt's testimony did not involve the other two defendants, and the defense of James Marable would have provided the same motives for cross-examination in the first trial as in the second trial.

Marable's counsel complained at trial and on appeal that the State was impeaching its own witness [3] and also bolstering its witness. An impeachment is the opposite of bolstering, and the State was not attempting either. If this testimony could only be considered for impeachment purposes, it could not be considered for purposes of conviction. The State did not seek introduction of this evidence for the purpose of impeaching the witness. The procedure used for introducing the evidence from the prior trial was laborious, time-consuming, and unnecessary. A great deal of time was spent asking the witness whether he recalled testifying about each question and

each answer. This type of question is required for impeachment by prior inconsistent statements, but this was not an impeachment. It did not matter whether this witness recalled testifying about these matters. The sole question was whether he remembered the facts about which he was called to testify. Once it was established that he had a lack of memory of the subject matter of his statement, then the former testimony could be read into the record. While we agree with Marable that the method used was repetitious, we do not find that it constituted error.

This is not a procedure that has been used often and, except for the rule, there is little case law for guidance. Marable cannot complain that he had no rights of cross-examination on this subject matter because full cross-examination rights were available and were exercised at the previous trial. This point of error is overruled.

Counsel next contends that the trial court erred by allowing the State to introduce evidence through Bolt's testimony about the extraneous offense of delivery of marihuana. Bolt had testified at the prior trial, as detailed in this Court's previous opinion, that "while Marable was in jail he told him that he had people harvesting his other marihuana, having it moved out and that he would bring Bolt some marihuana to the jail." Bolt testified that Marable later brought a paper sack of marihuana to the jail and dropped it in the outside dumpster in accordance with their conversation.

 Evidence showing an extraneous offense is not entirely inadmissible. It is not admissible to show an action taken in conformity with bad character, but is admissible if it makes more or less probable an elemental fact or a fact that inferentially leads to an elemental fact or tends to disprove an elemental fact in the same way. Some examples of proper uses for evidence of an extraneous offense include to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or ab-

---

**3.** The State is no longer prohibited from impeaching its own witness. *See* Tex.R.Crim.Evid.

607.

sence of mistake or accident. *Montgomery v. State*, 810 S.W.2d 372, 386 (Tex.Crim. App.1990); TEX.R.CRIM.EVID. 404(b). Counsel objected to the admission of testimony as referring to an extraneous offense. The trial judge overruled the objection. The trial court's ruling will not be disturbed unless this Court finds that the trial court abused its discretion in admitting the evidence and overruling the objection. *Montgomery*, 810 S.W.2d at 391. This objection is adequate to cause the court to determine whether the evidence had any relevance beyond providing proof of character conformity. *Montgomery*, 810 S.W.2d at 389; TEX.R.CRIM.EVID. 404(b).

■ Counsel argues that the only relevance of the extraneous offense was to show character conformity and that it was therefore inadmissible, *citing Gilbert v. State*, 808 S.W.2d 467, 472 (Tex.Crim.App. 1991). The objected-to testimony was clearly probative because it tends to make more probable the fact that Marable was raising quantities of marihuana. This directly supports the elemental fact that Marable was growing marihuana and that he knew the nature of the substance in contradiction to his apparent argument that he had no knowledge of its existence. Counsel did not further object on the basis that the relevance of the evidence was outweighed by the danger of unfair prejudice, nor did he complain on appeal on this basis. TEX.R.CRIM.EVID. 403. Thus, we do not reach the second prong of the *Montgomery* analysis. This point of error is overruled.

Marable next contends that the trial court erred by refusing to send the jury a charge on mere presence as it relates to possession. Counsel requested two inclusions in the charge:

Possession means more than being where the action is; it involves exercise of dominion and control over the thing actually possessed. . . .

And, further, the defendant would request in addition to or alternatively to the above, that the Court charge the jury that mere presence in the vicinity of a controlled substance is not sufficient to prove knowing possession.

The State responded by arguing that the court's charge sufficiently covered all of those concerns and requests. The trial judge denied counsel's request and tendered the following directive to the jury:

Our law provides that a person commits an offense if he knowingly or intentionally possesses a usable quantity of marihuana.

By the term "possession" is meant the actual care, custody, control, or management of the marihuana.

Possession is a voluntary act if the possessor knowingly obtains or receives the thing possessed or is aware of his control of the thing for a sufficient time to permit him to terminate his control.

■ The term *possession* is defined in TEX.PENAL CODE ANN. § 1.07(a)(28) (Vernon 1974). That definition is the one provided to the jury for its consideration. When a term or an offense is statutorily defined, that definition should be given to the jury. *Ray v. State*, 749 S.W.2d 939, 943 (Tex. App.–San Antonio 1988, pet. ref'd); *see Delgado v. State*, 628 S.W.2d 68, 69 (Tex. Crim.App. [Panel Op.] 1982). Counsel argues that the statutory definition is inadequate and that the elaborations upon that definition which have been produced over the years by the Court of Criminal Appeals should be attached to the written description so that the jury might more fully understand the import of the term. He specifically refers to statements set out in *McGoldrick v. State*, 682 S.W.2d 573, 578 (Tex.Crim.App.1985).

■ We do not find that the additional instructions were necessary. To a large extent, the requests were repetitive of the definition given to the jury. Although the term *dominion* was not used in the definition, the terms *actual care, custody, control, or management* were used, and these terms would require dominion. Actual care, custody, control, or management requires more than mere presence by the very definition, and it is not necessary to define what the absence of possession would show. This point of error is overruled.

Marable last contends that the evidence is legally insufficient to support the verdict. He does this in a rather circuitous fashion by arguing that the trial court erred in "denying appellant's motion for instructed verdict because the evidence was insufficient as a matter of law to prove possession of marihuana beyond a reasonable doubt."

In determining the question of legal sufficiency of the evidence, the relevant question is whether, after viewing the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Geesa v. State,* 820 S.W.2d 154 (Tex.Crim.App.1991).

In the present case, the State was required to prove that Marable exercised care, control, or management over the substance and that he knew the object he possessed was contraband. *Rodriguez v. State,* 635 S.W.2d 552, 553 (Tex.Crim.App. [Panel Op.] 1982). Possession need not be exclusive. Evidence which shows that the accused jointly possessed the contraband with another is sufficient. *Rodriguez v. State,* 635 S.W.2d at 553. However, the evidence must affirmatively link the accused to the contraband in such a manner and to such an extent that a reasonable inference may arise that he knew of its existence and that he exercised control of it. *Nunn v. State,* 640 S.W.2d 304, 305 (Tex.Crim.App. [Panel Op.] 1982). This link may be established by showing additional facts and circumstances which establish the accused's knowledge and control of the contraband. *McGoldrick,* 682 S.W.2d at 575.

James and Mary Marable had constructed a large greenhouse on the property. Approximately 1,500 plant starter cups were found near the barn. They had been used and were the type commonly used to start small marihuana seedlings. There is evidence that there were only two cultivated areas on the farm and that the marihuana had been planted in distinct rows and had been watered and fertilized.

A single row of corn had also been planted and located so that it partially obstructed the visibility of the larger marihuana patch when viewed from a private farm road that paralleled one side of the property. A three-wheeled vehicle was parked next to the Marables' residence, and a well-defined trail led from the residence around the barn to the larger marihuana patch. A water hose ran from the barn to the marihuana, and there were various other hoses designed for use as sprinklers. There was also a homemade sprinkler located beside the barn, only six or seven feet from the marihuana.

The evidence shows that, on property controlled and possessed by the Marables, two patches of marihuana were being carefully grown and tended. The Marables had been in sole possession of the property during all relevant times. The marihuana plants had been transplanted from pots and the majority of this occurred within 800 feet of the Marables' residence and within 20 feet of their barn.

Bolt testified that while Marable was in jail he told him that he "had people harvesting his other marihuana, having it moved out" and that he would bring Bolt some marihuana to the jail. Bolt testified that Marable later brought a paper sack with marihuana to the jail and dropped it in the outside dumpster in accordance with their conversation.

After viewing the evidence in the light most favorable to the verdict, we find that a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt and that the evidence sufficiently links Marable to the planting, care, and control of the marihuana plants. The evidence was therefore legally sufficient, and the trial court did not err in failing to grant his motion for instructed verdict. This point of error is overruled.

The judgment of the trial court is affirmed.