Andre Lamon **MOSLEY**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 14–94–00660–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

Aug. 29, 1996.

Discretionary Review Refused
Nov. 27, 1996.

Randy Schaffer, Houston, for appellant.

William J. Delmore, III, Houston, for appellee.

Before LEE, YATES and FOWLER, JJ.

**OPINION**

LEE, Justice.

Appellant entered a plea of not guilty before a jury to the offense of capital murder. TEX.PENAL CODE ANN. § 19.03 (Vernon Supp. 1994).[1] He was convicted of felony murder, *see id.* § 19.02(a)(3), and the jury assessed punishment at imprisonment for eighty

---

1. The crime for which appellant was convicted was committed before September 1, 1994, the effective date of the revised penal code. *See* Act of June 19, 1993, 73rd Leg., R.S., ch. 900, § 1.18(b), 1993 Tex.Gen.Laws 3586, 3708. Therefore, all references to the penal code are to the code as in effect at the time the crime was committed.

years. In two points of error appellant complains of the admission of unadjudicated extraneous offenses during the punishment phase of the trial and that his trial counsel was deficient during the punishment phase of the trial. Because appellant only complains of punishment phase errors, we affirm the jury's finding of guilt. However, we conclude that unadjudicated extraneous offenses were improperly admitted during punishment and, therefore, reverse the punishment portion of the trial court's judgment. Accordingly, we affirm in part, and reverse and remand in part.

In July 1993, appellant and a group of other young men raided a bar. They held the bar owner at gun-point and forced many of the patrons to turn over their money, car keys and other valuables. One of appellant's compatriots got into a fight with the bar owner which resulted in the owner being fatally shot in the chest.

Several days after the robbery, appellant turned himself into the police. He confessed to the crime in a written statement. He also executed a second statement where he confessed to a litany of other crimes committed by the group in the month prior to the charged offense. He was apparently involved in six other robberies. The statement also recited several other incidents which a couple of the members of the group had told appellant about, but appellant was not directly involved in.

The first statement was admitted into evidence during the guilt-innocence stage of the trial. The second statement was admitted, over objection, during the punishment phase of the trial. The jury was instructed in the jury charge that it was not to consider the second statement for punishment unless it found that appellant committed the offenses beyond a reasonable doubt.

In his first point of error, appellant complains of the admission of the second statement during the punishment phase of trial. Appellant was tried in June 1994. He argues that the admission of evidence during the punishment phase of his trial is controlled by *Grunsfeld v. State*, 843 S.W.2d 521 (Tex. Crim.App.1992). *Grunsfeld* interpreted the pre-September 1, 1993 version of article 37.07 section 3(a). That version of the article provided:

> Regardless of the plea and whether the punishment be assessed by the judge or the jury, evidence may, as permitted by the Rules of Evidence, be offered by the state and the defendant as to *any matter the court deems relevant to sentencing, including* the prior criminal record of the defendant, his general reputation and his character. The term prior criminal record means a final conviction in a court of record, or a probated or suspended sentence that has occurred prior to trial, or any final conviction material to the offense charged.

*Grunsfeld*, 843 S.W.2d at 523 (italics in original); *see also* TEX.CODE CRIM.PROC.ANN. art. 37.07 § 3(a) (Vernon Supp.1991), *amended by*, Act of June 19, 1993, 73rd Leg., R.S., ch. 900, § 5.05, 1993 Tex.Gen.Laws 3586, 3759, (current version at TEX.CODE CRIM.PROC.ANN. art. 37.07 § 3(a) (Vernon Supp.1996)). The court determined that article 37.07 section 3(a) provided that evidence was not admissible at punishment, even if the trial court deemed it was relevant to sentencing, **unless:**

1. it was permitted by the rules of evidence; and

2. it satisfied the article's definition of prior criminal record.

*Grunsfeld*, 843 S.W.2d at 523. Appellant maintains that the unadjudicated extraneous offenses contained in his second statement to the police were not admissible during punishment because they were not part of his "prior criminal record."

In *Grunsfeld*, the court of criminal appeals held that unadjudicated offenses did not fall within the definition of "prior criminal record" and, therefore, were inadmissible. *See id.* Because these were unadjudicated offenses, that is, offenses for which there was not yet a final conviction, it would appear that our disposition of this case has already been determined. *See Tyrone v. State*, 854 S.W.2d 153, 157 (Tex.App.–Fort Worth 1993,

pet. ref'd). However, the state presents several interesting, but unsuccessful, arguments why this matter is not controlled by *Grunsfeld*.

■ Initially, the state argues that appellant failed to preserve his error for appellate review because his trial objection was insufficient. After the jury returned its guilty verdict, the trial proceeded directly to the punishment phase. The state re-offered all of its guilt-innocence evidence and the testimony of the officer who took appellant's statements. In the course of the officer's testimony, the following discussion took place:

> [PROSECUTOR]: In addition to the statement that you took from the defendant regarding his involvement in this capital murder did you also attempt to take a statement from him regarding any other aggravated robberies that he was involved in?
>
> [DEFENSE COUNSEL]: May we approach the bench?
>
> THE COURT: Yes.
>
> [DEFENSE COUNSEL]: We would object to [the prosecutor] going into any unadjudicated offenses at this stage of the proceedings.
>
> [PROSECUTOR]: I disagree. I can under 3707.2373, 3707—
>
> THE COURT: Overrule the objection.

Later during the officer's testimony, when the state offered the statement into evidence, the following discussion occurred:

> [PROSECUTOR]: Was [the second statement] taken in accordance in the exact same manner as [the first statement] in regard to threats, promises, et cetera, regarding this defendant and anything he was threatened with or promised in exchange for giving the statement?
>
> [OFFICER]: Yes.
>
> [PROSECUTOR]: With that I offer [the second statement] into evidence. I will tender a copy to counsel for his inspection.

> [DEFENSE COUNSEL]: May I have a moment, Judge?
>
> THE COURT: Yes.
>
> [DEFENSE COUNSEL]: We would object to [the second statement] coming into evidence. It contains offenses that [appellant] has not been tried for. No jury has ever considered any of the evidence in those cases and we object to them coming into evidence at this point.
>
> THE COURT: Argument.
>
> [PROSECUTOR]: Your Honor, I believe under article 3707 Texas Code of Criminal Procedure unadjudicated offenses can be offered into evidence at the punishment stage and can be considered by a jury if they believe beyond a reasonable doubt that the defendant was involved in the commission of those offenses.
>
> THE COURT: Let me see the statement. Overrule the objection. Admit [the second statement].

After the exhibit was admitted into evidence, the officer read the entire exhibit to the jury. In the statement, appellant confessed that in June and July, before the charged offense:

1. He and several associates robbed a man at gun point and stole his car.
2. He drove the stolen car while his associates robbed a club. Shots were fired during the robbery.
3. He drove the stolen car while his associates committed two additional armed robberies during which shots were fired.
4. On two more occasions, he entered clubs with his associates who shot and robbed the customers.

In addition to these six offenses, the statement also included several other offenses which were committed by appellant's associates, but were included in the statement because some of the associates had told appellant about them. Thus, the jury heard evidence about not only appellant's crime spree, but also the numerous misdeeds of his associates.

The state argues that appellant's objections were deficient because they failed to put the trial court on notice of his exact

argument. The state maintains that at the time of trial, June 1994, the "published" version of article .37.07 section 3(a) allowed unadjudicated extraneous offenses to be admitted during punishment if it was demonstrated that appellant committed the extraneous offenses beyond a reasonable doubt. *See* TEX.CODE CRIM.PROC.ANN. art. 37.07, § 3(a) (Vernon Supp.1996). Thus, the state contends that appellant's actual argument on appeal is not that unadjudicated offenses were inadmissible, but rather that the "published" version of article 37.07 did not apply because appellant committed the offense before the effective date of the revised article. The state argues "it was incumbent upon the defendant to go one step further and object to introduction of 'unadjudicated' offenses on grounds that the existing law which permitted their introduction had a peculiar effective date provision."

 In order to preserve a complaint for appellate review, a party must present a timely, specific objection to the trial court. TEX.R.APP.P. 52. In order for an objection to be timely, it must be raised "at the earliest opportunity," or "as soon as the ground of objection becomes apparent." *Zimmerman v. State,* 860 S.W.2d 89, 100 (Tex.Crim.App. 1993), *vacated on other grounds,* 510 U.S. 938, 114 S.Ct. 374, 126 L.Ed.2d 324 (1993) (plurality op.) (quoting *Johnson v. State,* 803 S.W.2d 272, 291 (Tex.Crim.App.1990), *cert. denied,* 501 U.S. 1259, 111 S.Ct. 2914, 115 L.Ed.2d 1078 (1991), *overruled on other grounds, Heitman v. State,* 815 S.W.2d 681, 685 (Tex.Crim.App.1991)). A timely, specific objection is required to allow the trial court an opportunity to rule on the complaint and correct any error that may have occurred. This allows the trial to proceed under the proper procedural and substantive rules. *Janecka v. State,* 823 S.W.2d 232, 243–44 (Tex.Crim.App.1992) (op. on reh'g); *Meyers v. State,* 865 S.W.2d 523, 524 (Tex.App.–Houston [14th Dist.] 1993, pet. ref'd). When confronted with a waiver question, the court of criminal appeals has warned courts of appeals to not "split hairs." *Lankston v. State,* 827 S.W.2d 907, 909 (Tex.Crim.App. 1992). We are to reach the merits of a complaint "without requiring that the parties read some special script to make their wishes

known." *Id; see also House v. State,* 909 S.W.2d 214 (Tex.App.–Houston [14th Dist.] 1996, pet. granted) (Lee, J., concurring).

Both when the testimony of the officer was offered and when the exhibit was offered into evidence, appellant objected. In both instances, appellant complained that the evidence was not admissible because the offenses were "unadjudicated" or offenses for which appellant had not yet been tried or convicted. Under the pre-amendment version of article 37.07, per *Grunsfeld,* extraneous offenses were not admissible unless they were part of the defendant's prior criminal record. Unadjudicated offenses or offenses for which there was not a final conviction were not part of the defendant's prior criminal record. Therefore, appellant's trial objections exactly comport to what constituted error under *Grunsfeld.*

 Moreover, extraneous offenses are, by their nature, prejudicial. *Chavez v. State,* 866 S.W.2d 62, 65 (Tex.App.–Amarillo 1993, pet. ref'd). To be admissible, the state must demonstrate that they are relevant. *See Alba v. State,* 905 S.W.2d 581, 587 (Tex.Crim. App.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 783, 133 L.Ed.2d 734 (1996). Thus, once appellant objected to the offered evidence, the burden was on the state to demonstrate that the extraneous offense evidence was admissible. As the offering party, it was incumbent on the state to seek admission of the evidence under the proper version of the statute. It was not appellant's burden to "go one step further."

Thus, we find that appellant properly preserved his error for appeal with a timely, specific objection to the offered unadjudicated extraneous offense evidence. Requiring any more smacks of requiring appellant to "read some special script."

Next, the state contends that the 1993 amendments to article 37.07 should apply retroactively. The state raises two contentions in support of this argument: 1) article 37.07 is a procedural change and as such it applies to both pending and future actions, and 2) *Grunsfeld* was wrongly decided. During oral argument, the state admitted that we, as an intermediate court, could not

choose to disagree with or otherwise not follow the court of criminal appeals decision in *Grunsfeld.* The state invited the court to express disagreement with the decision so that the court of criminal appeals would be encouraged to revisit its decision. We decline the state's invitation to advocate.

As to the state's first contention,[2] the legislature clearly stated that the amendments to article 37.07 were to only be effective for offenses which were committed after September 1, 1993. Section 5.09 of the statute states, "The change in law made by this article applies only to an offense committed on or after the effective date of this article." Act of June 19, 1993, 73rd Leg., R.S., ch. 900, § 5.09, 1993 Tex.Gen.Laws 3586, 3760. Section 5.10 of the act states, "This article takes effect on September 1, 1993." *Id.* § 5.10. Sections 5.09 and 5.10 are the last two sections of article five of the act. Every section in article five amends the code of criminal procedure. *See id.* While the general rule may be that procedural changes apply to pending and future actions,[3] the legislature made it very clear that the general rule would not apply to the changes included in article five, including these amendments to article 37.07 of the code of criminal procedure. Thus, we hold that the amendments to article 37.07 section 3 only apply to offenses committed on or after September 1, 1993.

■ Finally, the state argues that appellant opened the door to the use of extraneous offense evidence against him because he filed a motion for probation and he presented the testimony of his father. Relying on *Beasley v. State*, 838 S.W.2d 695 (Tex.App.–Dallas 1992, pet. ref'd), *cert. denied*, 510 U.S. 969, 114 S.Ct. 451, 126 L.Ed.2d 384 (1993), the state argues that appellant opened the door by offering testimony on his suitability for probation.

In *Beasley*, the state presented its punishment evidence and then the defendant called his aunt to testify to prove his eligibility for probation. During the state's cross-examination of the aunt, she testified, "[the defendant] doesn't get into any trouble that's necessary to discuss." The state then questioned the aunt about specific extraneous offenses of the defendant. *Id.* at 707. In rebuttal, the state called a police officer who also testified to specific extraneous offenses which the defendant had committed. The Dallas court determined that the aunt's testimony opened the door to the extraneous offense evidence offered during the cross-examination of the aunt and the later officer's testimony.

As indicated above, appellant's second statement was offered and admitted during the officer's testimony in the state's punishment case-in-chief. After the state concluded its chase-in-chief, appellant's father testified.[4] Therefore, *Beasley* is the inverse of what incurred in this case.

The state argues that the different timing of the presentation of the extraneous offense evidence does not matter because of the "premature admission rule." The state maintains that any error in presenting the extraneous offense evidence during its case-in-chief was cured by appellant subsequently offering evidence of his suitability for probation. Each of the cases cited by the state for the "premature admission rule" are guilt-innocence cases which were decided before *Grunsfeld.*[5]

2. The state may have also "waived" this contention at oral argument. However, it was unclear whether the state was waiving the contention entirely or if it was simply not going to orally argue the contention. Because the matter is unclear, we have addressed the contention.

3. *See Wade v. State*, 572 S.W.2d 533, 534 (Tex. Crim.App.1978)

4. The father essentially testified that appellant was a "good kid." According to the father, appellant had been living with him until shortly before the various incidents occurred and that he did not have any problem with appellant while they were living together.

5. In support of its argument, the state cites *Rubio v. State*, 607 S.W.2d 498, 502 (Tex.Crim.App. 1980) (holding that error in presenting extraneous offenses during guilt-innocence was render harmless by defendant's later actions); *Michel v. State*, 745 S.W.2d 497, 498 (Tex.App.—Corpus Christi 1988, no pet.) (holding that testimony on re-direct examination opened the door to earlier cross-examination and later rebuttal testimony on extraneous offenses during guilt-innocence); *Hurtado v. State*, 722 S.W.2d 184, 188 (Tex. App.—Houston [14th Dist.] 1986, pet. ref'd)

When confronted with similar facts and a similar argument by the state, the Fort Worth court declined to adopt the state's argument. *See Tyrone,* 854 S.W.2d at 159–60. In *Tyrone,* the state argued that a guilt-innocence case, *Silva v. State,* 831 S.W.2d 819 (Tex.App.–Corpus Christi 1992, no pet.), should be extended to allow prematurely admitted extraneous offense evidence to be cured by evidence offered later by the defendant. The Fort Worth court rejected this argument and stated:

> Although the State asked us to extend *Silva* to the punishment phase, we refuse to do so. If *Silva* were extended, every time the State introduces evidence of unadjudicated extraneous offenses at the punishment phase, before the defendant opens the door, any attempts to rebut this evidence by the defendant would cure the erroneous admission and render the error harmless. We refuse to hold that *Grunsfeld* may be subverted so easily.

*Tyrone,* 854 S.W.2d at 160; *see also Ewes v. State,* 841 S.W.2d 16, 18 (Tex.App.–Dallas 1992, pet. ref'd).

In two pre-*Grunsfeld* cases issued on the same day, the court of criminal appeals addressed when a defendant could open the door to extraneous offense evidence during punishment. *See Drew v. State,* 777 S.W.2d 74 (Tex.Crim.App.1989) (plurality opinion); *Murphy v. State,* 777 S.W.2d 44 (Tex.Crim.App.1989) (plurality opinion on reh'g). In *Murphy,* the court held that a defendant could open the door to the admission of specific conduct during punishment regardless of whether he had applied for probation. *Murphy,* 777 S.W.2d at 67. The court explained that when the accused offers evidence of specific instances of good conduct so that he should receive a lenient sentence or that he is "suitable" for probation, the state could object to the evidence. The court further explained, however, that if the state chose to forgo the objection to the specific conduct evidence, it could then offer specific conduct evidence to rebut the defendant's evidence. The court gave the following example:

> An accused who initiates evidence of specific conduct at the punishment phase, or shows in the first instance that he has never been "in trouble" before, or that he can comply with the law if placed on probation, has "opened the door" to rebuttal evidence which may include proof of specific bad acts.

*Id.* Thus, a defendant can open the door to specific instances of extraneous offenses, if he first puts on evidence of specific instances of good conduct. However, because the defendant in *Murphy* only testified that he was eligible, as opposed to "suitable," for probation, the court held that it was error to admit five extraneous offenses. *Id.* at 68.

In *Drew,* like the current case, the state offered the extraneous offense evidence during its punishment case-in-chief. *Drew,* 777 S.W.2d at 74–75. In response to the state's case, appellant offered the testimony of a psychologist who opined that the defendant should be placed on probation and undergo a particular treatment program. *Drew,* 777 S.W.2d at 75. The court held that admitting the extraneous offense evidence over appellant's objection was error, and the error was not cured by the defendant offering the psychologist's testimony. The court explained:

> By protesting that evidence at the first opportunity, however, appellant indicated an unwillingness to "play ball." Moreover, once he objected at the outset, any evidence of like kind which appellant presented to refute evidence admitted over his objection should not be considered belated agreement to admit specific conduct in aid of jury discretion. *An accused cannot in fairness be expected to "forfeit" rebuttal of damaging evidence admitted over his objection in order to preserve error on appeal. Rather, we will presume appellant is "playing the game under protest."* Had appellant tendered his psychologist in the first instance, the State could have admitted the extraneous offense evidence, and

(holding that extraneous offense evidence offered to show intent was admitted prematurely during guilt-innocence, but that error was harmless because the defendant later testified and denied every element of the offense, including intent, **and** because the evidence of the defendant's guilt was overwhelming).

appellant would not be heard now to complain.

*Drew,* 777 S.W.2d at 76 (emphasis added).

The facts in the current case are indistinguishable from the facts in *Drew.* Accordingly, we, like the Fort Worth Court in *Tyrone,* reject the state's argument that the premature admission of extraneous offense evidence was cured by appellant later offering evidence of his "suitability" for probation. *See Tyrone,* 854 S.W.2d at 160; *see also McMillian v. State,* 865 S.W.2d 459, 460 (Tex.Crim.App.1993) (per curiam) (reversing this court in part because we improperly held that the defendant opened the door to extraneous offense evidence; the state offered the extraneous offense evidence before the defendant had offered any evidence); *Cedillo v. State,* 901 S.W.2d 624, 626–27 (Tex.App.—San Antonio 1995, no pet.). We find that it was error to admit the extraneous offense evidence over appellant's objection.

■ While not raised by the state, we are to conduct harm analysis whenever we find error in the proceedings. *See* TEX.R.APP.P. 81(b)(2); *McMillian,* 865 S.W.2d at 460; *Harris v. State,* 790 S.W.2d 568 (Tex.Crim. App.1989). The second statement which included the extraneous offense evidence contained six robberies which were substantially similar to the current offense. The statement also included other incidents that appellant did not participate in, but were equally prejudicial because they were performed by the same individuals that appellant assisted in the current offense. Appellant, who was seventeen at the time of the offense, had no prior convictions and yet he was sentenced to eighty years. Appellant's father testified on his behalf during punishment. During his closing argument, the prosecutor chastised the jury for returning a felony murder verdict rather than a capital murder verdict. He referred to several of the extraneous offenses and told the jury to "think long and hard" before it returned anything less than life in prison. Based on the entirety of the record, we cannot find that the error in admitting the extraneous offenses was harmless beyond a reasonable doubt. *See Hubbard v. State,* 903 S.W.2d 892 (Tex. App.—Fort Worth 1995, no pet.) (listing and applying the *Harris* factors); *Cedillo,* 901 S.W.2d at 627–28 (same); *McMillian v. State,* 874 S.W.2d 189 (Tex.App.—Houston [14th Dist.] 1994, pet. ref'd) (same). Accordingly, we sustain appellant's first point of error.

Because we sustain appellant's first point of error, we do not need to address his second point of error.

The judgment of the trial court is reversed and remanded for a new punishment hearing.