James **BOONE**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 14–97–00522–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

Aug. 23, 2001.

Rehearing Overruled Nov. 29, 2001.

Charles Freeman, Houston, for appellant.

John Harrity III, Richmond, for appellee.

Panel consists of Justices SEARS, DRAUGHN, and AMIDEI.*

## OPINION

DRAUGHN, Justice (Assigned).

James Boone appeals from his conviction for murder. After a punishment hearing before a jury, he was sentenced to 75 years incarceration. On appeal, Boone

---

* Senior Justices Ross A. Sears and Joe L. Draughn and Former Justice Maurice Amidei sitting by assignment.

contends that the trial court committed errors during the hearing on punishment. We affirm.

## I. Background

On September 25, 1992, James Boone shot and killed his wife, Joanne Boone, in front of one of her children. He pled guilty to murder, and the judge assessed punishment at life in prison. Boone appealed this conviction and the First District Court of Appeals reversed and remanded the case for another hearing on punishment. *See Boone v. State,* 01–93–01127–CR, 1995 WL 669205 (Tex.App.—Houston [1st Dist.] Nov.9, 1995)(not designated for publication).

At the conclusion of the new hearing on punishment, the jury assessed punishment at 75 years incarceration. On appeal, Boone contends that the trial court erred: (1) in refusing his request to enter a plea of not guilty and to conduct a new trial on guilt or innocence; (2) in refusing to quash the venire panel and in denying his objections to certain venire members; (3) in admitting certain evidence over his Rule 403 objections; (4) in failing to instruct the jury on the reasonable doubt standard; and (5) in pronouncing an unauthorized sentence. We affirm.

## II. Analysis

### A. Issues from Remand

Boone first contends that the trial court erred in denying his motion to enter a plea of not guilty and proceed with a jury trial to determine guilt or innocence. In the previous appeal in this case, the First District Court of Appeals reversed, based on a finding of ineffective assistance of counsel, and remanded the case specifically "for another punishment hearing consistent with this opinion." *See Boone,* 1995 WL 669205, at *10. Boone contends, however, that despite the court of appeals' order,

the trial court had a duty to determine itself whether a new guilt/innocence phase was necessary under TEX.CODE CRIM. PROC. ANN. Art. 44.29. Boone further contends that the trial court erred in not granting a new trial on guilt/innocence.

In cases where a defendant enters a plea of guilty or nolo contendere without the benefit of a plea bargain agreement, a court of appeals may remand the case simply for a new hearing on punishment if it finds trial court error solely in regard to the assessment of punishment. *See Levy v. State,* 818 S.W.2d 801, 802–803 (Tex.Crim.App.1991); *Ludwick v. State,* 931 S.W.2d 752, 755 (Tex.App.—Fort Worth 1996, no pet.). In the present case, Boone pled guilty without an agreed recommendation as to punishment, and the First Court of Appeals remanded expressly for a new punishment hearing. The court found ineffective assistance in that counsel failed to object to the presentence investigation report, which the court found to contain particularly prejudicial hearsay evidence. *See Boone,* 1995 WL 669205, at *10. The court considered and rejected contentions regarding Boone's guilty plea, including ineffective assistance and voluntariness. The court also considered and overruled Boone's contention, restated in this appeal, that the trial court improperly considered the presentence investigation report after accepting the plea but before finding him guilty. *Id.* at *3.

The primary cases relied upon and discussed by Boone, in suggesting that the trial court needed to make a determination under article 44.29, involve situations wherein a not guilty plea was entered and the trier of fact made a determination as to guilt or innocence. *See, e.g., Ex parte Sewell,* 742 S.W.2d 393 (Tex.Crim.App. 1987); *Ex parte Klasing,* 738 S.W.2d 648 (Tex.Crim.App.1987); *Stewart v. State,* 13

S.W.3d 127 (Tex.App.—Houston [14th Dist.] 2000, pet. ref'd). Boone does not cite any case, and we have found none, holding that a trial court has to make a determination regarding a new guilt/ innocence phase when a court of appeals has remanded solely for a new punishment hearing after a guilty plea was entered without a plea bargain agreement. The rule from the *Levy* case, that a court of appeals may remand solely for a new hearing, remains undisturbed. *See Ludwick,* 931 S.W.2d 752, 755. Accordingly, we overrule Boone's first point of error.

## B. Venire Panel

In points of error two, three, and four, Boone attacks the trial court's denial of several of his requests regarding voir dire and the venire panel. Specifically, Boone contends that the trial court erred: (1) in denying his motion to quash the venire panel; (2) in overruling his objections to four veniremembers; and (3) in denying his request for additional time to voir dire certain jurors. His contentions are all based on an argument of impropriety in the juror information forms used in Fort Bend County District Court. The forms included the following item: "Check box below and sign if you wish to donate the $6.00 per day to the victims of crime fund." The "$6 per day" refers to the fee paid for jury service.

Boone asserts that the inclusion of this option on the information form prejudiced the members of the venire against him, because it improperly heightened their sympathies for the victim of the crime. Prior to voir dire, Boone's counsel made an oral objection to the venire panel that the court rejected. Later, after a discussion on challenges for cause, and after both the defense and prosecution had submitted their list of peremptory challenges, Boone's counsel objected to the four members of the panel who indicated a desire to donate the six dollar fee. Counsel requested one additional peremptory challenge and additional voir dire to develop the issue.

### 1. Separation of Powers

■ Boone's appellate arguments are all premised on the contention that the collection of donations to the victim's fund by an agent of the judicial branch runs afoul of the constitutionally mandated separation of powers because such collection was not authorized by statute. He states that at the time of trial only the attorney's general's office was specifically authorized to collect for the fund, citing Tex.Code Crim. Proc. Ann. Art. 56.54 (Vernon Supp.2000). This separation of powers argument, however, has been waived in that Boone did not raise it in the trial court. *See Bell v. State,* 938 S.W.2d 35, 54 (Tex.Crim.App.1996)(legal theory on appeal must comport with legal basis for objection in trial court).

■ The separation of powers argument is also based on a faulty premise. The Texas Government Code actually *requires* jurors to be given the option of donating their fee. *See* Tex. Gov't Code Ann. § 61.003 (Vernon Supp.2000). Such requirement, with minor amendments, has been the law of Texas since 1995. *See* Acts 1995, 74th Leg., ch. 329, § 1, eff. Sept. 1, 1995, *amended by* Acts 1997, 75th Leg., ch. 875, § 1, eff. Sept. 1, 1997; Acts 1997, 75th Leg., ch. 1313, § 1, eff. Sept. 1, 1997; Acts 1997, 75th Leg., ch. 1423, § 8.01, eff. Sept. 1, 1997; Acts 1999, 76th Leg., ch. 41, § 1, eff. Sept. 1, 1999. The jury in this cause was impaneled on April 29, 1997. The initial provision was to be effective for all jurors summoned on or after January 1, 1996. *See id.* Although the date of the jury summonses do not appear in the record, we may assume that they were issued after the effective date of the original provision because prospective

juror's names are pulled, at the earliest, just prior to each term of court. *See* Tex. Gov't Code Ann. §§ 62.004(b)[1], 62.012 (Vernon 1998).

### 2. Actual Bias

■ Furthermore, Boone has failed to demonstrate actual bias on the part of any of the jurors. He argued to the trial court and reargues on appeal: (1) that the entire panel was tainted by the introduction of the issue of sympathy for victims, and (2) that the particular jurors who actually donated their fee were tainted with bias. Boone's counsel, however, failed to ask any questions during voir dire to show that any member of the panel, much less the four who donated, were affected in any way by the opportunity to donate to the victims' fund. The burden of proof is on the party seeking to exclude a juror to demonstrate a reason for the challenge for cause. *See T.K.'s Video, Inc. v. State,* 871 S.W.2d 527, 529 (Tex.App.—Fort Worth 1994, pet. refused); *Marable v. State,* 840 S.W.2d 88, 91 (Tex.App.—Texarkana 1992, pet. ref'd); *see also Fuller v. Johnson,* 114 F.3d 491, 499–500 (5th Cir.1997)("[w]here a party seeks to exclude a venire member because of bias, that party must demonstrate through questioning that the potential juror lacks impartiality."); *Marx v. State,* 953 S.W.2d 321, 333 (Tex.App.—Austin 1997), *aff'd,* 987 S.W.2d 577 (Tex.Crim. App.1999)("[t]o prevail on a challenge for cause, the defendant must demonstrate either a bias against himself or against a rule of law upon which he was entitled to rely."). Counsel did ask specific questions regarding whether the potential jurors could be fair and impartial and could follow the law, and Boone does not complain that any venire member that said they had a problem with any of these issues ended up on the jury. Counsel clearly had the opportunity to inquire specifically about the victims' fund donations but failed to do so; consequently, there was no showing of actual bias.

### 3. Bias *Per Se*

■ Boone's second and third points of error could be read as implying that the juror's knowledge of the victims' compensation fund or donations thereto demonstrated bias *per se.* Boone, however, cites no cases even remotely supporting such a position, and we are aware of none. To the contrary, in *Ruckman v. State,* No. 12–99–00388–CR, 2000 WL 1746542 (Tex. App.—Tyler Nov. 29, 2000, pet. ref'd)(designated for publication), the court rejected this same argument on very similar facts. To paraphrase the court in *Ruckman,* a defendant's entitlement to impartial jurors does not include an entitlement to jurors impartial toward the underlying crime or toward victims. *See id.* at *2 (citing *United States v. Johnson,* 990 F.2d 1129, 1133 (9th Cir.1993)). We agree with the analysis in *Ruckman* and reject this argument. Accordingly, we overrule points of error two and three.

### 4. Voir Dire

■ In his fourth point of error, Boone contends that the trial court erred in refusing to allow him additional time in voir dire to question the veniremembers who donated their fees to the victims' fund. Boone's counsel, however, did not make this request until after the close of voir dire and after the sides submitted their juror strike lists. In order to preserve error for appellate review, a litigant must make a timely and sufficiently specific request, objection, or motion. Tex.R.App. P.

---

1. The current version of § 62.004 is cited for ease of reference, as the 1997 amendment only added the phrase "or constable" to the statute and thus does not affect the present case. *See* Acts 1997, 75th Leg., ch. 36, § 1, eff. Sept. 1, 1997.

33.1. An objection or request is timely if made at the earliest opportunity or as soon as the ground for such objection or request becomes apparent. *See Mosley v. State,* 931 S.W.2d 670, 674 (Tex.App.—Houston [14th Dist.] 1996, pet. ref'd).

In the present case, Boone's counsel undertook extensive voir dire that runs 58 pages in the reporter's record. He concluded without having mentioned the issue of the victims' fund, even though he had brought it to the court's attention immediately before beginning voir dire. Furthermore, there is no suggestion by Boone, and no indication in the record, that Boone's counsel used all of his allotted voir dire time or that the court forced him or even urged him to finish before he was ready; in fact, he began to end his voir dire twice before actually doing so. Counsel did not at that time request any additional voir dire. Counsel only made the request for more time after the strike lists had already been submitted. Under the circumstances, such request was not timely. *See generally Menchaca v. State,* 901 S.W.2d 640, 646 n. 2 (Tex.App.—El Paso 1995, pet. ref'd)(discussing preservation of voir dire time issues). Accordingly, we overrule point of error number four.

### C. Evidentiary Objections

#### 1. Victim Impact Evidence

In his fifth point of error, Boone asserts that the trial court erred in overruling his objections to certain victim impact testimony under Rule 403 of the Texas Rules of Evidence. Specifically, Boone complains

that while some victim impact testimony may have been permissible, or at least admitted without objection, the court allowed an unduly prejudicial amount of such testimony into evidence over his objections.

In non-capital felony cases, the general rule remains that the State may present evidence as to any matter the trial court, in the legitimate use of its discretion, may deem relevant to sentencing. *See* TEX.CODE CRIM. PROC. ANN. Art. 37.07, § 3(a)(Vernon Supp.2000)[2]; *Moreno v. State,* 38 S.W.3d 774, 777 (Tex.App.—Houston [14th Dist.] 2001, no pet. h.)(plurality opinion). Whether victim impact testimony is deemed relevant depends on whether the testimony has some bearing on the defendant's personal responsibility and moral guilt. *Stavinoha v. State,* 808 S.W.2d 76, 77 (Tex.Crim.App.1991); *Moreno,* 38 S.W.3d at 777.[3] If the defendant should have anticipated the particular effect on the victim or the victim's family (in other words: if the impact was foreseeable) then the evidence is relevant. *Moreno,* 38 S.W.3d at 778.

Boone does not challenge the relevance of the victim impact testimony in this case; instead, he argues that the sheer weight of the testimony was unfairly prejudicial. Rule 403 of the Texas Rules of Evidence states that:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or

---

2. This section has been amended many times since its inception in 1965; however, the "any matter the court deems relevant" language has been in the provision since 1989. *See* Acts 1989, 71st Leg., ch. 785, § 4.04, Sept. 1, 1989.

3. Although three separate opinions were issued from the panel in *Moreno,* all three concur on the point that victim impact testimony is relevant and admissible when it bears on the defendant's personal responsibility and moral culpability and when such impact was foreseeable. *See Moreno,* 38 S.W.3d at 777 (Amidei, J., plurality); *id.* at 780 (Hudson, J., concurring); *id.* at 781 (Murphy, CJ., dissenting)(all three rely on *Stavinoha,* 808 S.W.2d at 79).

misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence.

Rule 403 favors the admission of relevant evidence, and it presumes that relevant evidence will be more probative than prejudicial. *Verbois v. State*, 909 S.W.2d 140, 142 (Tex.App.—Houston [14th Dist.] 1995, no pet.). The burden is on the appellant to demonstrate that the negative attributes of the admitted evidence outweigh its probative value. *Id.* The trial court's decision to admit the evidence should be overturned only on an abuse of discretion, i.e. only when it is outside the zone of reasonable disagreement. *Id.*

 It does appear that victim impact evidence can run afoul of Rule 403. *See, e.g., Jones v. State*, 963 S.W.2d 177, 182–83 (Tex.App.—Fort Worth 1998, pet. ref'd)(analyzing impact testimony for undue prejudice). Boone relies heavily on the Court of Criminal Appeals opinion in *Mosley v. State*, 983 S.W.2d 249, 262 (Tex. Crim.App.1998). In *Mosley*, the court stated: "we caution that victim impact and character evidence may become unfairly prejudicial through sheer volume.... Hence, we encourage trial courts to place appropriate limits upon the amount, kind, and source of victim impact and character evidence." *Mosley*, 983 S.W.2d at 263. The *Mosley* case, however, dealt with the use of victim impact testimony in death penalty cases, and thus is not directly on point for non-capital felony cases such as the present prosecution. *See id.* at 261–64. Although we view *Mosley* as instructional in non-capital cases, *i.e.*, an unreasonable amount of victim impact evidence may become unfairly prejudicial, the analysis cannot be identical. In particular, the court in *Mosley* emphasizes that victim

impact evidence is only admissible insofar as it relates to a mitigation special issue in the jury charge. *See id.* at 263. Such instruction is not given in non-capital cases and such limitation on victim impact evidence does not apply in those cases. *See Moreno*, 38 S.W.3d at 777(analyzing victim impact evidence in a non-capital felony case, post-*Mosley* ). Therefore, Boone's heavy reliance on his contention that he did not offer "any mitigating evidence" that would have allowed the state to introduce victim impact evidence is inapposite to this appeal.

In the present case, the majority of what could be called victim impact testimony was introduced before the jury without objection.[4] This testimony included: Shirley Stewart's testimony that her life was "totally changed" by her sister Joanne's death; Aaron Boone's testimony that he was angry at his father for causing his mother's death; Jerard Randle's testimony that he too was angry, that he didn't like James Boone, and that, before she died, his mother used to prepare him for school in the mornings; and James Soloman's testimony that he felt hate because Boone killed his sister.

At least arguably, Boone's counsel timely objected to other pieces of victim impact evidence, including: Aaron's testimony that he missed his mother and did not want to ever live with James Boone again; Aaron's testimony regarding some of his mother's good qualities; Mary Miller's testimony that Joanne Boone, her first cousin, enjoyed herself while at a parade on the day she was killed; and Soloman's testimony that he felt hurt. Boone contends that this objected-to testimony added unnecessary volume to the sum of victim impact evidence and thus unfairly prejudiced him.

---

4. Testimony often serves more than one purpose. For example, when Jerard Randle testified about seeing Boone shoot his [Jerard's] mother, he is testifying as to how the murder was committed and, beyond a doubt, he is providing victim impact evidence.

We disagree. The specific evidence about which Boone complains added only slightly to the weight of victim impact evidence, and it did so without stretching the bounds of what is acceptable impact testimony. *See Mosley,* 983 S.W.2d at 262 (discussing possible limitations on such testimony). All of the testimony came from close relatives (Joanne Boone's two sons, brother, sister, and first cousin); the questions and answers were brief, to the point, and not needlessly cumulative. The admission of such testimony did not unfairly prejudice Boone. Accordingly, point of error number five is overruled.

### 2. Guilty Plea

In his sixth point of error, Boone complains of the admittance into evidence of State's exhibit number 10, which was Boone's guilty plea. The plea includes his initial waivers of the right to a jury trial and the right to remain silent. Boone contends that this exhibit was irrelevant and that any probative value was outweighed by its prejudicial nature, again citing Rule 403.

As discussed above, Rule 403 favors the admission of relevant evidence, and it presumes that relevant evidence will be more probative than prejudicial. *Verbois,* 909 S.W.2d at 142. The burden is on the appellant to demonstrate that the negative attributes of the admitted evidence outweigh its probative value. *Id.* The trial court's decision to admit the evidence should be overturned only on an abuse of discretion, i.e. only when it is outside the zone of reasonable disagreement. *Id.* We find that Boone has failed to overcome his burden in regard to the guilty plea.

 Typically, a guilty plea is entered to the jury and the jury is instructed by the court to find the defendant guilty. *See Matchett v. State,* 941 S.W.2d 922, 946 (Tex.Crim.App.1996)(Clinton, J., dissenting)(explaining process); *see also Steele v.*

*State,* 22 S.W.3d 550, 552 (Tex.App.—Fort Worth 2000, pet. ref'd)(applying process). In the present case, the trial on punishment occurred after a remand from the court of appeals specifically as to punishment only. Therefore, the jury did not need to make even a *pro forma* entry regarding guilt. Boone is basically contending that the mere fact that the case is on remand renders the guilty plea irrelevant and unfairly prejudicial. He does not, however, offer much in the way of explanation.

 The guilty plea is certainly relevant to the issue of punishment. Without establishing the fact that he committed the crime, there would be no reason to punish him. *See* U.S. CONST. Amend. XIV, § 1; TEX. Const. Art. I, § 10; TEX. PEN.CODE ANN. § 2.01 (Vernon 1994)(presumption of innocence). Furthermore, in assessing the degree of punishment to be given, the jury may have been aided in knowing that the defendant admitted his guilt. Indeed, when present, this factor may often favor the defendant, as the jury may take it as a sign of the defendant's contrition. *See generally Leday v. State,* 983 S.W.2d 713, 721 (Tex.Crim.App.1998)(discussing the impact of such defense strategy on the appeal); *Vaughn v. State,* 931 S.W.2d 564, 567 (Tex.Crim.App.1996)(stating that defendant wanted "to seek leniency from the jury by 'coming clean.' ").

Boone offers no explanation for why he claims the guilty plea is unfairly prejudicial against him other than to point to the fact the plea contained his initial waivers to the right to a jury and the right to remain silent. He contends that reading these waivers could conceivably confuse the jury in that Boone did not testify and punishment was, in fact, decided by a jury. We first note that, although on remand Boone did retract his waiver of a jury trial,

he points to no place in the record, and we have found none, wherein he retracted his waiver of the right to remain silent. The revelation of his waiver of the right to remain silent was, therefore, not unfairly prejudicial. Additionally, Boone offers no explanation as to how the revelation of his subsequently retracted waiver of a jury trial was unfairly prejudicial to his case. Whether the jury knew he had originally waived his right to a jury or not, the jury was instructed on the law it was to follow and the decision it was to make. Hence, we find that no unfair prejudice resulted from the revelation.

Lastly, we note that Boone makes no specific contention that the trial court violated either of these constitutionally protected rights, the right to a jury trial or the right to remain silent. To the extent his points of error could be read as raising such claims, he has waived them through inadequate briefing on the issue. *See Tong v. State*, 25 S.W.3d 707, 710 (Tex. Crim.App.2000). Boone cites no cases in support of any constitutional claims, and he fails to provide a jurisprudential framework on which we could conduct a proper analysis. *See id.*

In short, we find that Boone has failed to meet his burden of demonstrating that the alleged negative attributes of the admitted evidence outweighed its probative value. *See Verbois*, 909 S.W.2d at 142. Accordingly, we overrule point of error number six.

### D. Reasonable Doubt in Jury Charge

■ Boone next attacks the trial court's refusal to instruct the jury on the standard of "reasonable doubt." In alternate points of error seven and eight, he asserts that the trial court should have instructed the jury on reasonable doubt either with or without an accompanying definition of the phrase.

■ The State does not have to prove the appropriate sentence beyond a reasonable doubt. *Garcia v. State*, 901 S.W.2d 724, 731 (Tex.App.—Houston [14th Dist.] 1995, pet. ref'd); *Urbano v. State*, 808 S.W.2d 519, 523 (Tex.App.—Houston [14th Dist.] 1991, no pet.). Therefore, the jury charge in the punishment phase of the trial should generally not contain an instruction on reasonable doubt. *Garcia*, 901 S.W.2d at 731.[5] This is true even when the case has been remanded simply for a new punishment hearing. *See Rische v. State*, 834 S.W.2d 942, 946–47 (Tex.App.—Houston [1st Dist.] 1992, pet. ref'd)(elements of offense not required in jury charge on remand for punishment); *Urbano*, 808 S.W.2d at 523 (state has no burden of proof on remand for punishment). Accordingly, we overrule points of error seven and eight.

■ In two additional points of error, nine and ten, Boone contends that sections 37.07(3)(b)(separate hearing on proper punishment) and 44.29 (effect of reversal) of the Texas Code of Criminal Procedure are unconstitutionally vague because they do not include provisions requiring courts to instruct juries on reasonable doubt when a defendant pleads guilty and the only jury proceeding is on punishment. In his sole paragraph on this issue, Boone cites only one case, *Rische*, which does not discuss the constitutionality of these statutes and is contra his position regarding the proper interpretation of the statutes. *See id.*, 834 S.W.2d at 946–47 (holding that elements of offense are not required in a

---

**5.** The present case does not present a question concerning extraneous offenses or other penalty enhancement issues. *See generally Martinez v. State*, 4 S.W.3d 758, 759 (Tex. Crim.App.1999); *Kutzner v. State*, 994 S.W.2d 180, 188–89 (Tex.Crim.App.1999)(discussing charge requirements relating to enhancement paragraphs).

▮ charge on remand for punishment). Boone fails to cite any other relevant authority from this jurisdiction, or any other, to support his constitutional claims. In short, he has failed to provide us with a legal framework on which we can analyze his claims, novel or otherwise. *See Tong v. State,* 25 S.W.3d at 710. Accordingly, Boone's ninth and tenth points of error are overruled.

## E. Unauthorized Sentence

▮ In point of error eleven, Boone contends that the trial court pronounced an unauthorized sentence against him because there was no signed written judgment in existence at the time of the oral pronouncement of the sentence. Prior to the 1981 amendments to article 42.02 of the Texas Code of Criminal Procedure, the statute was construed as requiring the existence of a written judgment as a prerequisite to the pronouncement of sentence. *Jones v. State,* 795 S.W.2d 199, 202 n. 5 (Tex.Crim.App.1990)(citing *Thornton v. State,* 576 S.W.2d 407, 408 (Tex.Crim.App. 1979)). The 1981 amendments redefined a sentence as "that part of the judgment ... that orders that the punishment be carried into execution in the manner prescribed by law." *See* Acts 1981, 67th Leg., p. 809, ch. 291, § 1, eff. Sept. 1, 1981. In other words, "a sentence [under art. 42.02] is nothing more than the portion of the judgment setting out the terms of punishment." *State v. Ross,* 953 S.W.2d 748, 750 (Tex.Crim.App.1997); *Banks v. State,* 29 S.W.3d 642, 644 (Tex.App.—Houston [14th Dist.] 2000, no pet. h.).

▮ The cases relied upon by Boone for his contention that there has to be a written judgment in effect at the time of the oral pronouncement all precede the 1981 amendments. *See, e.g., Thornton,* 576 S.W.2d 407; *Conaway v. State,* 549 S.W.2d 181 (Tex.Crim.App.1977); *Scott v. State,* 461 S.W.2d 619, 620 (Tex.Crim.App. 1971). In *Jones,* the court of criminal appeals, at least impliedly, indicated that a written judgment need no longer be in existence at the time of the oral pronouncement of sentence required by article 42.03, § 1. *See Jones,* 795 S.W.2d at 202 n. 5 [6]; *see also Rodarte v. State,* 860 S.W.2d 108, 109–10 (Tex.Crim.App.1993)(holding that appellate timetable begins at oral pronouncement of sentence and not at time of subsequently signed written judgment). We follow the *Jones* court's reasoning and hold that the existence of a written judgment is no longer a prerequisite to the pronouncement of sentence. Boone does not contend, and we do not find, that the trial court's oral pronouncement of the sentence conflicted with the sentence contained within the subsequent written judgment. *See Coffey v. State,* 979 S.W.2d 326, 328 (Tex.Crim.App. 1998)(oral pronouncement controls because "it is the pronouncement of sentence that is the appealable event, and the written sentence or order simply memorializes it and should comport therewith," citing *Rodarte,* 860 S.W.2d at 109–10). We overrule point of error number eleven.

The judgment of the trial court is affirmed.

---

6. Indeed, the court found it "ironic" that while article 42.02 now defines the sentence as part of a written judgment, article 42.03 still requires oral pronouncement of the sentence. *See Jones,* 795 S.W.2d at 202 n. 5.